The plaintiffs appeal from the dismissal of their cases for a failure to state a claim upon which relief can be granted. Rule 12(b)(6), Ala.R.Civ.P. The defendants, Liberty National Life Insurance Company and Torchmark Corporation, argue that the dismissal was proper because they say the plaintiffs cannot possibly demonstrate that they have suffered any injury. We disagree, and therefore, we reverse.
At the heart of this dispute is a certain "cancer" policy, sold to the plaintiffs, and written by Liberty National. This policy was intended to supplement the plaintiffs' regular medical insurance and would oblige the insurance company to pay various medical costs in the event an insured, i.e., one of the plaintiffs, developed cancer. The policy was guaranteed to be renewable during the lifetime of the insured, subject only to adjustments in the premium. During 1987 and 1988, Liberty National told the plaintiffs, through its agents, that there was a newer and better cancer policy available. Although it would cost more, the agents promised that it would provide additional benefits and more complete coverage than the old policy had provided.
The plaintiffs allege, however, that the new policy not only cost them more, but offered less coverage than did the old one. They further allege that Liberty National engaged in a fraudulent campaign to induce them to exchange the old policy for the new, by promising additional coverage and more benefits, but knowing that the new policy provided less extensive coverage and would cost the customers more. The defendants, however, contend that even if this allegation were true, it would be irrelevant, because, as the parties stipulated, none of the plaintiffs has ever filed a claim under either the old or the new policy. Based on this reasoning, the trial court held that the plaintiffs had failed to state a claim because, it held, they had suffered no injury that would entitle them to relief under any theory of law. Rule 12(b)(6), Ala.R.Civ.P. The question before *Page 581 
this Court is whether the plaintiffs' allegation that they have suffered a cognizable injury merely from the exchange of the policies and the payment of greater premiums, even though none of them has ever filed a claim under either the old or the new policy, is sufficient to state a claim of fraud.
"In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Rule 9(b), A.R.Civ.P. In regard to a fraud claim that has been dismissed pursuant to Rule 12(b)(6), once this Court determines that the plaintiff complied with Rule 9(b), then this Court applies the following standard of review:
 " 'It is a well-established principle of law in this state that a complaint, like all other pleadings, should be liberally construed, Rule 8(f), Ala.R.Civ.P., and that a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. Winn-Dixie of Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala. 1979). Stated another way, if under a provable set of facts, upon any cognizable theory of law, a complaint states a claim upon which relief could be granted, the complaint should not be dismissed. Childs v. Mississippi Valley Title Insurance Co., 359 So.2d 1146 (Ala. 1978).
 " 'Where a [Rule] 12(b)(6) motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff. First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258
(Ala. 1981). In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Karagan v. City of Mobile, 420 So.2d 57 (Ala. 1982).'
 "Greene County Board of Education v. Bailey, 586 So.2d 893 (Ala. 1991), quoting Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985)."
Grant v. Butler, 590 So.2d 254, 255 (Ala. 1991) (emphasis added in Grant).
To establish a prima facie case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance. § 6-5-101, Ala. Code 1975; Crowder v. Memory HillGardens, Inc., 516 So.2d 602 (Ala. 1987); International Resorts,Inc. v. Lambert, 350 So.2d 391 (Ala. 1977).
To support a claim alleging suppression of a material fact, a plaintiff must show: (1) that the defendant suppressed a material fact, (2) that the defendant had a duty to communicate that material fact, either because of a confidential relationship between the parties, or because of the particular circumstances of the case, and (3) that the plaintiff suffered actual injury as a result of the suppression. § 6-5-102, Ala. Code 1975; Crowder, supra; Chapman v. Rivers ConstructionCo., 284 Ala. 633, 227 So.2d 403 (1969).
This appeal involves only the element of actual injury.
 " '. . . [F]raud, without damage, or damage, without fraud, gives no cause of action; but, where these two do occur, there an action lieth.' Einstein, Hirsch Co. v. Marshall Conley, 58 Ala. 153, 160 [1877]; Wall v. Graham, 192 Ala. 396, 399, 68 So. 298, 299 [1915].
 " '. . . Deceit and injury must concur. . . . Damage is of the essence of the action of deceit; an essential element to the right of action, and not merely a consequence flowing from it.' Wall v. Graham, supra."
Pihakis v. Cottrell, 286 Ala. 579, 583, 243 So.2d 685, 688
(1971).
Although the parties stipulated that none of the plaintiffs has ever filed a claim under either cancer policy, we now hold that if their allegations are true (and when reviewing a Rule 12(b)(6) dismissal we must assume that the plaintiff's allegations are true), then the payment of additional premiums on the unnecessary *Page 582 
new policy was an injury — damage — to the plaintiffs, and therefore, could entitle them to compensation under a cognizable theory of law. The plaintiffs say they paid additional premiums on the new policy in the expectation that the benefits of the new policy, should they ever need them, would be greater, although the new policy, they say, had fewer benefits.
The exchange of the policies is the fraudulent act complained of, but it is not, in and of itself, the injury or damage. The injury or damage alleged is that the plaintiffs were persuaded, through the fraudulent acts of the defendants, to pay for something they did not receive. In other words, the alleged injury or damage was the payment of greater premiums that were unnecessary because the plaintiffs received no additional coverage in return for the greater premiums and lost benefits they already enjoyed under the old policy.
It is easy to understand the predicament the trial court faced in this case: the standard by which to judge whether a plaintiff has suffered damage or injury from an insurer's actions, when no claim has been filed, is nebulous at best, because there are two distinct lines of cases in this state. In the first line, the one on which the trial judge relied, claims were disallowed; although there was a period during which the plaintiffs did not receive the coverage for which they had paid, and even though the plaintiffs claimed that this was the result of the defendants' allegedly fraudulent acts, that period had passed without the plaintiffs' having filed a claim. See, Moore v. Liberty National Life Ins. Co., 581 So.2d 833
(Ala. 1991); Allen v. Gulf Life Insurance Co., 617 So.2d 664
(Ala. 1993); and Applin v. Consumers Life Insurance Co.,623 So.2d 1094 (Ala. 1993). The second line of cases has declared the fraud complete, and actionable, at the time the allegedly fraudulent transaction occurred, viewing the injury or damage as the payment of unnecessary premiums. See, e.g., Willinghamv. United Ins. Co. of America, 628 So.2d 328 (Ala. 1993);Liberty National Life Insurance Co. v. Waite, 551 So.2d 1003
(Ala. 1989); Guinn v. American Integrity Ins. Co., 568 So.2d 760
(Ala. 1990); Brewton v. Alabama Farm Bureau Mut. Cas. Ins. Co.,474 So.2d 1120 (Ala. 1985); Old Southern Life Ins. Co. v.Woodall, 348 So.2d 1377 (Ala. 1977). We now believe that the better law is in this second line of cases. Therefore, to the extent that the holdings in Moore v. Liberty National Life Ins.Co., 581 So.2d 833 (Ala. 1991), Allen v. Gulf Life InsuranceCo., 617 So.2d 664 (Ala. 1993), and Applin v. Consumers LifeInsurance Co., 623 So.2d 1094 (Ala. 1993), are inconsistent with cases declaring that the injury or damage from the fraudulent transaction is the payment of unnecessary premiums, these cases are overruled.
When a person, such as Wilhelmena Boswell in this case, buys cancer insurance, she hopes that she will never have to "use" it. That does not mean that she cannot be injured by the loss of, or a reduction in, those benefits that could be claimed, should that very event against which she sought to be insured ever occur and she was forced to "use" the policy. An insurer has already weighed the risk that that event will occur and has contractually expressed its willingness to take that risk for a price, i.e., the premium. The contractual agreement between the insurer and the insured should be a fair and open transaction — a suitable price for an appropriate service. However, when an insurer disturbs this negotiated balance, through fraudulent misrepresentation or fraudulent suppression of material facts, the insured should be allowed to recover in order to counterbalance the damage or injury thereby done to her. Make no mistake, even if the insured files no claim, the loss of what the insured paid for constitutes legal damage or a legal injury. The insurer cannot be allowed to profit from its fraud simply because the insured is "lucky" enough never to have to "use" the coverage.
Guinn v. American Integrity Ins. Co., 568 So.2d 760
(Ala. 1990), is typical of the second line of cases. There, agents visited Guinn, an 88-year-old woman, and sold her a "package" of two insurance policies, even though she still had five months of coverage remaining on a policy that was equal, or superior, to one of the policies in the package. The agents admitted that there was no reason that they could not have sold Guinn only the *Page 583 
one additional policy; instead, they wrongly told her that the benefits available under the package were superior to those available under her existing coverage and told her she would be better off to purchase the package and allow her other policy to lapse. After consulting another agent, who told her that the package did not provide better coverage, but was just more expensive, Guinn sued, alleging fraudulent misrepresentation. The defendants moved to dismiss because Guinn had never filed a claim under the new policy and, therefore, they argued, she had not been injured. However, the Court stated:
 "In addition, this Court does not agree that Guinn did not present . . . evidence that she was damaged by the agents' alleged misrepresentations. If, in fact, Guinn's purchase of the American Integrity policy was needless, then it is clear that she parted with over $800 and received absolutely no advantage. This Court also rejects the defendants' argument that, possible misrepresentations notwithstanding, Guinn suffered no damage because she did not file a claim during the period that she was insured by American Integrity and Providers Fidelity. This is not an action for breach of contract, and that argument ignores the hardship that would be experienced by any person after needlessly spending over $800."
Guinn, 568 So.2d at 763.
Guinn was not the first case in which the Court had recognized the payment of an unnecessary premium as damage or an injury. "Payment of the premium by [the plaintiff], which was shown here, has been held to be proof of the necessary damage." Brewton v. Alabama Farm Bureau Mut. Cas. Ins. Co.,474 So.2d 1120, 1124 (Ala. 1985). In Old Southern Life Ins. Co. v.Woodall, 295 Ala. 235, 326 So.2d 726 (1976), the Woodalls had purchased a hospital insurance policy from an Old Southern agent who came to their home. The policy excluded coverage for certain ailments during the first six months after the effective date of the policy. Mrs. Woodall was hospitalized with a respiratory ailment, but Old Southern denied coverage because the condition had developed within the six-month period. The Woodalls sued, alleging fraud. A jury returned a verdict for the Woodalls; on appeal, this Court remanded for a new trial, but it upheld the trial court's submission of the fraud claim to the jury. On retrial, Old Southern added as a defense its contention that the Woodalls had suffered no damage or injury, because the company had returned the premiums paid. However, on the second appeal, the Court stated:
 "Defendant has cited us to the case of Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685
(1971), as authority for the proposition that the payment into court by the defendant should have been considered by the jury in 'mitigation of damages,' and that it was error for the trial court to fail to so instruct in his oral charge.
 "It is true that an amount which a party receives as compensation for his injury is applicable to reduce his damages recoverable from a tortfeasor. Anderson v. Kemp, 279 Ala. 321, 184 So.2d 832 (1966). Such proof does not, however, in any way defeat the victim's right to recover his damages. So that in this case, the plaintiff was entitled to recover any actual damages claimed and sustained by the fraud committed upon him, notwithstanding the payment into court of sums based upon the contract out of which the fraud arose. His acceptance of those sums, to be sure, would have mitigated any recovery he would have been entitled to based upon breach of contract. But the mere tender of those sums in satisfaction of the defendant's contract obligation did not mitigate plaintiff's right to recover any compensatory damages claimed and proved for fraud, or punitive damages should they have been applicable. Pihakis itself lends support for this view. In that case, the defendant contended that after the alleged fraud had occurred, the plaintiff had received deeds and a check covering their recording costs, which would place the plaintiff in the same position she occupied before the alleged misrepresentation took place. While acknowledging that this evidence was admissible to reduce the plaintiff's recovery, the court noted that it would not defeat plaintiff's right to recover. Here, plaintiff's compensatory damages recoverable, if alleged and proved, *Page 584 
would consist of the money he was induced to part with, his premium payments, and punitive damages should malice, wilfulness or aggravation have been shown. Thus, the tender by the defendant of any sum under a supposed satisfaction of its contract obligation, and of which plaintiff testified he was unaware, would not mitigate the plaintiff's damages claimed on account of defendant's fraud. By tendering the sum of money into court, therefore, accompanied by the allegation that it was all the money due under its policy, defendant was not mitigating plaintiff's damages, but apparently was simply seeking to reduce the amount of damages it might be caused to pay by virtue of the plaintiff's claim of fraud.
". . . .
 "We agree with the defendant that damage to the plaintiff is an essential element of fraud. But that damage was shown here by the evidence of plaintiff's payment of the $72.00 premium following the alleged misrepresentations. This proof of actual pecuniary loss from the fraud would support an award for compensatory damages. Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975); Alabama Great Southern Railroad Co. v. Sellers, 93 Ala. 9, 9 So. 375 (1891)."
Old Southern Life Ins. Co. v. Woodall, 348 So.2d 1377, 1381-83
(Ala. 1977) (emphasis in original) (citations omitted).
The discussion in Old Southern illustrates the point that once a fraud has been committed, the perpetrator cannot "take it back" or cover it up by his subsequent actions. Yet Moore,Allen, and Applin could be construed by the bench and bar as allowing time, less than the statutory period of limitations for fraud actions, to eradicate the fraud. In those three cases, there was a possible fraud, but either because the defendant restored the policy to its pristine condition, or because events transpired in such a way that the plaintiff never had to "use" the policy, the Court allowed the defendants to behave as if nothing had ever happened. This is inconsistent with Willingham v. United Ins. Co. of America, supra; LibertyNational Life Insurance Co. v. Waite, supra; Guinn v. AmericanIntegrity Ins. Co., supra; Brewton v. Alabama Farm Bureau Mut.Cas. Ins. Co., supra; and the 1977 opinion in Old Southern LifeIns. Co. v. Woodall, supra. Once a fraud has been accomplished, subsequent actions cannot completely erase the injury done to the person against whom the fraud was committed. It is for the factfinder to assess the exact nature of the injury or damage sustained by the plaintiff, and to compensate the plaintiff with damages for that injury or damage. For the distinction between "damage," which means loss or injury, and "damages," which refers to "a pecuniary compensation" for an injury or loss or damage, see Black's Law Dictionary, 389 (6th ed. 1991). See, also, Bryan A. Garner, A Dictionary of Modern Legal Usage
165 (Oxford University Press 1987).[1]
The Court recently affirmed this principle in Willingham v.United Ins. Co. of America, 628 So.2d 328 (Ala. 1993):
 "Actual damage is an essential element of a cause of action alleging fraud. United principally argues that because the Willinghams did not make any claims on the policies and were not denied any benefits, the Willinghams did not incur any actual damage. We disagree. *Page 585 
". . . .
 ". . . While the Willinghams were paying premiums on the policies, they believed that they were receiving valid insurance coverage, but they never actually received anything of value.
 "We reject United's contention that, as a matter of law, the payment of insurance premiums is not sufficient evidence of damage to support a claim of fraud against an insurer. The undisputed evidence that the Willinghams paid premiums on the four life insurance policies is sufficient to support their claim that they were damaged as a proximate result of United's alleged misrepresentations."
Willingham, at 332-33 (emphasis added) (citations omitted).
Boswell and her fellow plaintiffs alleged that they were induced to part with their money through fraudulent acts on the part of the defendants; that the defendants persuaded them to allow their old policies to lapse by knowingly and falsely promising that the new policy would offer all the same coverage plus additional benefits; and that the new policy cost more, while actually offering less coverage. That is an allegation of injury or damage sufficient to withstand a motion to dismiss under Rule 12(b)(6).
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, STEAGALL, INGRAM and COOK, JJ., concur.
[1] "damage(s). '[T]he word damage, meaning "Loss, injury, or deterioration," is to be distinguished from its plural, —damages — which means "a compensation in money for a loss or damage." ' American Stevedores, Inc. v. Porello, 330 U.S. 446, 450
n. 6 [67 S.Ct. 847, 850 n. 6, 91 L.Ed. 1011] (1947) (quotingBlack's). In the following sentence, the two terms are correctly used: 'After actual damage is shown it is unnecessary to show its money extent to sustain a judgment for exemplarydamages.'
"Often, however, the words are misused: 'In Massachusetts exemplary damages are not recoverable in an action for libel; only actual damage [read damages] may be recovered.'/ 'The tornado caused an estimated $20,000,000 in damages [readdamage].'/ 'Most commercial flights arrive at their destinations safely; unfortunately, when an accident does occur, the physical, emotional, and economic damages [readdamage, for this is a mass noun in this context] may be enormous.' (Economic damages, in any event, would be aREDUNDANCY.)
"Damage is used adjectivally to correspond with damages, n. E.g., 'Alternative safeguards . . . reduce the need for a private damage action [= action for damages].' Forrester v.White, 792 F.2d 647, 658 (7th Cir. 1986)."