KENNEDY, Justice
(dissenting).
This is another ease in which it is alleged that Liberty National Life Insurance Company engaged in fraudulent acts of policy replacement or “switching.” See, e.g., Adams v. Robertson, 676 So.2d 1265 (Ala.1995) (insureds brought class action against Liberty National alleging fraud that caused them to switch cancer insurance policies); Liberty Nat’l Life Ins. Co. v. McAllister, 675 So.2d 1292 (Ala.1995) (insured brought fraudulent suppression action against Liberty National, following exchange of old version of cancer insurance policy for new version that made sharp reduction in coverage); Boswell v. Liberty Nat’l Life Ins. Co., 643 So.2d 580 (Ala.1994) (insureds brought fraud action against Liberty National for exchanging old policy for new policy that cost more and had fewer benefits); Benefield v. Liberty Nat’l Life Ins. Co., 632 So.2d 1328 (Ala.1994) (insureds brought fraud action based on Liberty National’s cancer insurance policy exchange programs); Barlow v. Liberty Nat’l Life Ins. Co., 708 So.2d 168 (Ala.Civ.App.1997) (insured sued Liberty National and agent on claims of negligence, wantonness, willful or reckless misrepresentation, deceit, and suppression in sale and exchange of various life insurance policies).
In this case, the trial court granted Liberty National’s motion for a directed verdict as to all damages except nominal compensatory damages, and punitive damages. Thereafter, the jury returned a verdict in favor of the plaintiffs for $100 in nominal compensatory damages and $5,000,000 in punitive damages. The trial court then used the incongruity between the punitive damages awarded and the nominal compensatory damages awarded as a basis for ordering a remittitur of the punitive damages to $37,500, a reduction of over 99% of the punitive damages awarded by the jury. By affirming without opinion, the majority authorizes this questionable practice on the part of the trial court, and I respectfully dissent.
First, I think the trial court committed reversible error in granting Liberty National’s motion for a directed verdict on the basis that the Stricklands had not been damaged. This Court has consistently held that proof of “[pjayment of the premium by [the plaintiff]” is “proof of the necessary damage” in a fraud action based on the sale of an insurance policy. Boswell v. Liberty Nat’l Life Ins. Co., 643 So.2d 580, 583 (Ala.1994) (quoting Brewton v. Alabama Farm Bureau Mut. Cas. Ins. Co., 474 So.2d 1120, 1124 (Ala. 1985)). The Stricklands presented substantial evidence indicating that Liberty National’s agent replaced the plaintiffs’ old life insurance policy with a new one and in doing so misrepresented that the benefits provided by the new policy, on which the Stricklands made payments, would be greater than those provided by the old policy. This misrepresentation, the Stricklands alleged, was part of a company-wide program of wrongfully replacing policies, a program for the sole *424 financial benefit of Liberty National. Moreover, the trial court did not allow the jury to consider the Stricklands’ claims of mental anguish, which would have supported a compensatory damages award, given the Strick-lands’ testimony that they had suffered from such damage. Therefore, I believe the issue of compensatory damages was of such a character as to warrant the jury’s consideration.
Second, I write to express my concern about the danger, in eases such as this, of comparing compensatory damages to punitive damages where the trial court has limited the damages recovery to an award of nominal compensatory damages and an award of punitive damages. In BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the United States Supreme Court noted that the ratio of punitive damages to compensatory damages was a factor for the court to consider in evaluating the excessiveness of a punitive damages award. Id. at 579-80, 116 S.Ct. at 1601. However, unlike the present case, in Gore the jury was afforded an opportunity to consider awarding compensatory damages. Id. at 563-64, 116 S.Ct. at 1593. Moreover, in Gore, the jury awarded compensatory damages. Id. at 563-64, 116 S.Ct. at 1593. That unrestricted compensatory damages award provided the United States Supreme Court with one basis for considering the claimed exeessiveness of the punitive damages award. Nevertheless, in Gore, the United States Supreme Court stated, “[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award.” Id. at 582, 116 S.Ct. at 1602.
In the present case, it could be noted that the ratio of punitive damages to compensatory damages is 50,000 to 1 ($5 million punitive/$100 compensatory) and that had the plaintiffs accepted the remittitur, the resulting ratio would still have been 375 to 1 ($37,500 to $100). Nevertheless, I find it unreasonable to consider comparing punitive damages to compensatory damages in eases such as this. I say this because I believe that such an incongruity between compensatory damages and punitive damages is what should logically follow in a ease where a trial court prevents a jury from considering the award of significant compensatory damages. In other words, such a course of action by the trial court will, in almost every circumstance where a noticeable punitive damages award is returned, result in a ratio of punitive to compensatory damages that appears to be excessive. By considering the ratio of punitive damages to compensatory damages in cases such as this, a court gives the appearance that it is straining to fashion a mathematical formula from which to differentiate the excessive from the equitable. The United States Supreme Court, in Gore, warned against such decisions by stating, “We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit in every case.” Id., 517 U.S. at 582-83, 116 S.Ct. at 1602.