[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 145 
 On Second Application for Rehearing and On Application for Rehearing
The opinion of November 19, 2004, is withdrawn, and the following is substituted therefor.
Upon the trial of the claims of the plaintiffs Magnolia Jackson and Henry Jackson ("the plaintiffs") against the defendant Alfa Life Insurance Corporation ("Alfa") for fraud, negligent or wanton failure to procure life insurance, and breach of contract, the jury returned a general verdict awarding the plaintiffs $500,000 in compensatory damages and $5,000,000 in punitive damages. Alfa renewed its motion for a judgment as a matter of law ("JML"), which the trial court had denied at the close of all the evidence, and moved, in the alternative, for a new trial or a remittitur. After conducting a BMW/Hammond Green Oil[1]
hearing, the trial court denied Alfa a JML, a new trial, or a remittitur of the compensatory-damages award. However, the trial court remitted the punitive-damages award from $5,000,000 to $1,500,000 to achieve a ratio of punitive damages to compensatory damages of three to one and allocated a portion of this reduced punitive-damages award to the nonparty Alabama Civil Justice Foundation, Consumer Protection Division.
Alfa appeals the denial of a JML and the denial of a remittitur of the compensatory-damages award. Claiming that the trial court should have reduced the punitive-damages award to an amount even less than $1,500,000, Alfa also appeals the remittitur of the punitive-damages award.
Claiming that the trial court should not have reduced the punitive-damages award *Page 146 
at all, the plaintiffs cross-appeal that remittitur. The plaintiffs also cross-appeal the allocation of a portion of the reduced punitive-damages award to the nonparty Alabama Civil Justice Foundation.
We conclude that, while the trial court did not err in denying Alfa a JML on the plaintiffs' breach-of-contract claim, the trial court did err in denying Alfa a JML on the plaintiffs' tort claims. Thus, the trial court submitted two "bad counts" and one "good count" to the jury. Because the jury returned a general verdict for the plaintiffs, we must reverse the judgment entered on that verdict. Larrimore v. Dubose, 827 So.2d 60, 63 (Ala. 2001). On the basis of our analysis of the issues on appeal as they affect the plaintiffs' claims, we must remand the case to the trial court for entry of a JML on the tort claims and for a new trial on the contract claim. Our reversal of the judgment for the plaintiffs moots the parties' respective issues regarding damages.
 Facts A. Substantive Facts
In reviewing the denial of a JML, we consider all of the relevant undisputed evidence, accept the tendencies of the disputed evidence most favorable to the nonmoving party, and resolve all reasonable factual doubts in favor of the nonmoving party. See Alexander, Corder, Plunk, Baker Shelly, P.C. v.Jackson, 811 So.2d 506, 513 (Ala. 2001). Considered in that manner, the evidence established the following facts.
Following the birth of the plaintiffs' younger daughter, Hillary, Magnolia Jackson went to the office of Alfa agent Rickey English in October 1992 to inquire about life insurance on Hillary. Magnolia Jackson testified:
 "A. . . . When I went to see Rickey about getting some insurance on Hillary, I told him that I wanted insurance where when Hillary and Shantell[, the plaintiffs' older daughter,] get grown that they wouldn't have to worry about paying no more insurance. So Rickey told me that he would sell me an insurance policy that would be paid up in fifteen years. So we talked some more about how much the pay was, and then I asked him to explain to me more about the fifteen year pay-up. And Rickey told me I would get a letter in the mail explaining to me about the fifteen year pay-up, and that's what he told me.
". . . .
 "Q. And was this statement that y'all would only have to pay premiums for fifteen years something you relied on before deciding to buy it?
"A. Yes.
". . . .
 "Q. Would you have bought these policies had he told you that you might have to make premiums in the future after fifteen years?
"A. No.
 "Q. Would y'all have bought this policy had he told you that you could be paying on these policies for fifteen years and they could still go out of force because they were underfunded?
"A. No, I would not have.
 "Q. Now, at this meeting that y'all attended, did Mr. English mention anything at all about interest rates?
"A. No.
 "Q. Would you tell me what you know about interest rates, please?
"A. Nothing at all.
". . . .
 "Q. . . . He didn't use any words like vanishing premium, did he?
"A. No. *Page 147 
 "Q. And he didn't use any words like sustain or self-sustain. He didn't use any words like that, did he?
"A. No."
(Emphasis added.)
In fact, in October 1992, Alfa did not have any policies that would pay up in 15 years. Relying on English's representation that the new Alfa policies would pay up in 15 years, the plaintiffs took out new Alfa life insurance policies on their own lives and on their daughters' lives.
The plaintiffs subsequently received written Alfa life insurance policies. The written policies stated:
 "FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY[2]
"Death Proceeds Paid on Insured's Death
 "Flexible Premium Payable During Lifetime of Insured Until Maturity Date
"Adjustable Death Benefit
 "This is a Non-Participating Policy"
(Plaintiffs' Trial Exhibits 2, 3, 4, and 5; capitalization in original.) The schedule of benefits on page three of each policy listed the maturity date of each policy. The listed maturity dates were September 22, 2046 for the policy insuring the life of Henry Jackson; October 19, 2050 for the policy insuring the life of Magnolia Jackson; October 19, 2073 for the policy insuring the life of Shantell Jackson; and October 19, 2087 for the policy insuring the life of Hillary Jackson. Magnolia Jackson did not know what "flexible premium adjustable life insurance" was. Each policy notified the plaintiffs of their right to cancel the policy within 10 days and to receive a refund of the initial premium they had paid on the policy. Each policy also contained this provision:
 "Entire Contract. This policy and the copy of the application attached to it is the entire contract. . . ."
The plaintiffs paid premiums on all four of these policies. None of the new policies provided that payment of the specified premium for 15 years would pay up the policies. When Magnolia Jackson did not receive the expected letter from Alfa confirming that the policies would pay up in 15 years, she wrote a letter to Alfa. In pertinent part, the letter stated that English had told Magnolia Jackson when she took out the policies that "these policies would be paid up in 15 years." (Plaintiffs' Trial Exhibit 18; emphasis added.) The letter requested "verification that these policies will be paid up in 15 years." (Id.) In response, Alfa district manager Hardy Bryan met with the plaintiffs on August 10, 1995. Bryan told the plaintiffs that the four policies Alfa issued in 1992 would not pay up in 15 years. Further, Bryan told the plaintiffs that each of the four policies would lapse before the end of the estimated life span of the person whose life was insured by it unless the plaintiffs increased the amount of the premiums they were paying on each policy.
 B. Procedural Facts
The plaintiffs sued Alfa and English in January 1996 for fraud and negligent or wanton failure to procure life insurance. In addition, they sued only Alfa for breach of an oral contract to issue policies that would provide for the 15-year pay up.[3] *Page 148 
Immediately before jury selection,[4] and after an off-the-record discussion among the trial judge and the parties' counsel, the following exchange occurred on the record:
 "THE COURT: Plaintiffs have made an oral motion to dismiss Mr. English with prejudice. Any argument from either side?
 "[English's attorney]: On behalf of Rickey English, we accept the offer.
"THE COURT: That streamlines things.
"[English's attorney]: With your permission.
"THE COURT: Let's go."
However, the trial court did not formally order the dismissal of the claims against English. Thereafter, Alfa moved to amend its answer to add this defense:
 "The dismissal with prejudice of all claims against Rickey English acts as an adjudication of all claims against Alfa based upon respondeat superior and such claims are thereby barred."
The trial court denied Alfa leave to add that defense and allowed the claims against Alfa to proceed to trial.
At the close of all the evidence, Alfa moved for a JML. Among other grounds, Alfa asserted these:
 "122. All claims against [Alfa] based on respondeat superior are barred by the dismissal with prejudice of all claims against Rickey English.
 "123. All claims against [Alfa] are predicated on alleged statements or conduct by Rickey English, against whom all claims have been dismissed with prejudice. That dismissal is a prior adjudication of the claims against [Alfa], and requires a dismissal of all claims against [Alfa]."
The trial court denied the motion. Thereafter, the plaintiffs moved to set aside the dismissal of the claims against English:
 "[Plaintiffs' attorney]: [O]n the morning of January 3 we moved the Court for a dismissal of Rickey English on an understanding with defendant's counsel for Rickey English, Dennis Bailey, and Robert Ward that they would not help in any way Alfa in this case. . . .
". . . .
 "And based on our agreement, I agreed — I made a motion to dismiss it. The Court dismissed it with prejudice. They were allowed to leave. I would like to move that that agreement to dismiss Rickey English be set aside."
The trial court denied the plaintiffs' motion to set aside the dismissal of the claims against English and submitted the plaintiffs' claims against Alfa for fraud, negligent or wanton failure to procure insurance, and breach of an oral contract to the jury. On January 10, 2001, the jury returned a general verdict for the plaintiffs. That same day, the trial court wrote and signed an order, a discrete document, rendering judgment against Alfa on the basis of the jury verdict. The January 10, 2001 order did not mention English or the plaintiffs' claims against English. The next day, the following unsigned, uninitialed entry was made on the case action summary:
"1/11/2001 Case assigned status of:
 Disposed Disposed on: 01/10/2001 by (jury verdict) Court action judge: Hon. *Page 149 
Burt Smithart $500,000.00 compensatory 
$5,000,000.00 punitive [English] disposed by (dism w/o prej) [sic] on 01/11/2001."
(Emphasis added.) Thereafter, Alfa filed its postjudgment motions.
 Issues
On appeal, Alfa raises these issues: (1) whether the trial court erred in denying Alfa a JML on the ground that the plaintiffs' claims were not ripe; (2) whether the trial court erred in denying Alfa a JML on the plaintiffs' tort claims, on the ground that the plaintiffs' putative dismissal of the tort claims against English with prejudice foreclosed the plaintiffs from further prosecuting their tort claims against Alfa; (3) whether the trial court erred in denying Alfa a JML on the plaintiffs' fraud claim, on the ground that the plaintiffs had failed to prove the essential element of justifiable reliance;[5] (4) whether the trial court erred in denying Alfa a JML on the plaintiffs' breach-of-contract claim, on the ground that this claim was based on oral statements which merged into the written policies of insurance that Alfa subsequently issued; and (5) whether the trial court erred in denying a remittitur of the compensatory-damages award and a greater remittitur of the punitive-damages award. We need not detail the remittitur issues since they are mooted by our reversal of the plaintiffs' judgment.
On cross-appeal, the plaintiffs challenge the rulings of the trial court remitting the punitive-damages award and allocating a portion of the punitive-damages award to the nonparty Alabama Civil Justice Foundation. Our reversal of the plaintiffs' entire judgment moots these issues.
 Standard of Review
In Ex parte Helms, 873 So.2d 1139, 1143-44 (Ala. 2003), we detailed the standard for appellate review of a ruling on a motion for JML:
 "The appellate standard for reviewing a ruling on a motion for judgment as a matter of law, a `JML,' is the same as the standard for the original decision by the trial court.
 "The first prerequisite for JML in favor of a movant who asserts a claim or an affirmative defense is that the claim or affirmative defense be valid in legal theory, if its validity be challenged. The second prerequisite for JML in favor of such a movant, who necessarily bears the burden of proof, is that each contested element of the claim or affirmative defense be supported by substantial evidence. The third prerequisite for JML in favor of such a movant is that the record be devoid of substantial evidence rebutting the movant's evidence on any essential element of the claim or affirmative defense. Substantial rebutting evidence would create an issue of fact to be tried by the finder of fact and therefore would preclude JML. JML in favor of the party who asserts the claim or affirmative defense is not appropriate unless all three of these prerequisites coexist.
 "JML in favor of a movant who does not assert the claim or affirmative defense but who only opposes it, and who therefore does not bear the burden of proof, is appropriate in either of two alternative cases. One is that the claim or affirmative defense is invalid in legal theory. The other is that one or more contested essential elements of the claim or affirmative defense is unsupported by substantial evidence. If either alternative *Page 150 
be true, JML is appropriate. If, however, the nonmovant's claim or affirmative defense is valid in legal theory and is supported by substantial evidence on every contested element, JML is inappropriate irrespective of the presence or weight of countervailing evidence.
 "The statutory definition of substantial evidence is: `evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989), explains, `substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' A trial court deciding a motion for JML and an appellate court reviewing such a ruling must accept the tendencies of the evidence most favorable to the nonmovant and must resolve all reasonable factual doubts in favor of the nonmovant."
(Citations omitted; emphasis original.)
 Law and Analysis A. Ripeness
A "vanishing premium" policy is a self-sustaining policy:
 "The underlying theory of [`vanishing premium'] policies is that the cash value of the policies will generate enough income through dividends and interest to pay the premiums on the policies and the policies will thereby sustain themselves. The ability of such policies to sustain themselves depends on mortality rates, expenses, dividends, and interest rates."
Williamson v. Indianapolis Life Ins. Co., 741 So.2d 1057, 1060
(Ala. 1999). Because premiums continue to be paid on such policies after the so-called "vanish date," albeit from the cash values of the policies rather than from the pockets of the insureds, "[t]echnically . . . the premiums on such policies never vanish." Id.
Policies that "pay up" in a specified number of years, on the other hand, require no premium payments from any source beyond the specified premium-payment period:
 "Although potentially identical in effect, a paid-up policy differs from a vanish pay policy. A paid-up policy is contractually guaranteed never to require premium payments beyond the stated premium payment period. No such guarantee exists with a vanish pay policy."
Kenneth Black, Jr. Harold D. Skipper, Jr., Life Insurance 106 (Prentice Hall, Inc. 12th ed. 1994) (emphasis added).
In Williamson, supra, Stringfellow v. State Farm LifeInsurance Co., 743 So.2d 439 (Ala. 1999), and DeArman v.Liberty National Life Insurance Co., 786 So.2d 1090 (Ala. 2000), the plaintiffs-insureds alleged that the defendants-insurers had misrepresented the date when their "vanishing premium" policies would become self-sustaining. However, the plaintiffs-insureds had sued the defendants-insurers before the policies were to become self-sustaining according to the alleged representations of the defendants-insurers. Because, when the plaintiffs-insureds sued the defendants-insurers, the capacity of the cash values to sustain the policies depended on interest rates that could change in the future, the prospects that the policies would perform as represented or would fail so to perform in the future were likewise uncertain on the date suit had been filed. Therefore, inWilliamson, Stringfellow, and DeArman, this Court held that the claims of the plaintiffs-insureds *Page 151 
were not yet ripe for adjudication when they sued the defendants-insurers.
However, this Court held in Boswell v. Liberty National LifeInsurance Co., 643 So.2d 580 (Ala. 1994), and Donoghue v.American National Insurance Co., 838 So.2d 1032 (Ala. 2002), that a claim that the plaintiff-insured was misled to pay premiums for a policy by representations that the policy would contain a coverage or feature that the subsequently issued policy did not in fact contain, is ripe as soon as the plaintiff-insured pays a premium. In Boswell and Donoghue, this Court held that the plaintiffs had suffered actual injury as soon as they had paid their first premiums for their policies because the plaintiffs "were persuaded, through the fraudulent acts of the defendants, to pay for something they did not receive," Boswell, 643 So.2d at 582. In Donoghue, on the basis of the same nonconformity, this Court similarly held the plaintiff-insured's breach-of-contract claim ripe.
Alfa argues that the present case is a "vanishing premium" case and that under the holdings in Williamson, Stringfellow, andDeArman the plaintiffs' claims will not be ripe until the expiration of 15 years from October 1992. We disagree. English represented that the policies "would be paid up in fifteenyears." (Emphasis added.) He did not represent that the policies would contain a "vanishing premium" provision, that the premiums would "vanish," that the policies would become "self-sustaining," or that interest earned on the cash values of the policies would enable the cash values to pay the premiums after 15 years.[6] Because English represented that the policies would be "paid up" in 15 years and not that the policies would be self-sustaining in 15 years, the performance of the policies in accordance with English's representation has never depended on future interest rates. Rather, the truth or falsity of English's representation depends only on whether the policies themselves provide that they will be paid up by the plaintiffs' payment of the premiums for 15 years. Because the policies do not so provide, the policies, immediately upon issuance, belied English's representation. Like the plaintiffs in Boswell andDonoghue, the plaintiffs in the present case "were persuaded, through the fraudulent acts of the defendants, to pay for something they did not receive," i.e., policies that will be paid up in 15 years. Boswell, 643 So.2d at 582. Thus, their claims were ripe as soon as they paid their first premiums. Id.
Similarly, immediately upon issuance, the policies were in nonconformity with, and therefore breach of, the oral contract by Alfa to issue policies providing for a 15-year pay up. Thus, the plaintiffs' contract claim too was ripe when they filed it.Donoghue.
 B. Putative Dismissal of the Claims Against English with Prejudice
We must first decide whether and how the plaintiffs' tort claims against the agent English were effectively dismissed. The only manifestations of dismissal of *Page 152 
those claims in the record are the exchange between the trial judge and counsel discussing a dismissal with prejudice at the beginning of the trial, the plaintiffs' oral motion to set aside that dismissal at the close of all the evidence, the recitation of a dismissal without prejudice at the end of the unsigned, uninitialed case action summary entry dated 1/11/2001 (the day after the trial), and the absence of any record of the plaintiffs' prosecuting any claims against English personally after the initial in-court exchange about dismissing those claims with prejudice.
In pertinent part, Rule 41(a), Ala. R. Civ. P., provides:
"(a) Voluntary Dismissal: Effect Thereof.
 "(1) By Plaintiff; By Stipulation. . . . [A]n action may be dismissed by the plaintiff without order of court . . . by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the . . . stipulation, the dismissal is without prejudice. . . .
 "(2) By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."
Rule 58, Ala. R. Civ. P., provides:
 "(a) Rendition of Judgments and Orders. A judge may render an order or judgment: (1) by notation thereof upon bench notes without any other or further written document or (2) by executing a separate written document, or (3) by including the order or judgment in the opinion or memorandum, or (4) by simply appending to the opinion or memorandum or including therein direction as to the order or judgment sought to be entered.
 "(b) Sufficiency of Judgment, Order, or Minute Entry Thereof. A judgment or order, or the minute entry thereof, need not be phrased in formal language nor bear particular words of adjudication. The judgment or order, or the minute entry thereof, will be sufficient if it is signed or initialed by the judge, or by the clerk in the case of a judgment entered pursuant to Rule 55(b)(1), and indicates an intention to adjudicate, considering the whole record, and if it indicates the substance of the adjudication.
 "(c) Entry of Judgment or Order. Upon rendition of a judgment or order as provided in subdivision (a) of this rule, unless it contains a specific direction otherwise or is subject to the provisions of Rule 54(b), the clerk shall note such judgment or order forthwith in the civil docket if separately maintained. Notation of a judgment or order on separately maintained bench notes or in the civil docket or the filing of a separate judgment or order constitutes the entry of the judgment or order. The entry of the judgment or order shall not be delayed for the taxing of costs."
(Emphasis added.) Because the trial judge rendered judgment against Alfa (not English) "by executing [(including signing)] a separate written document," Rule 58(a), the first part of the unsigned, uninitialed 1/11/2001 case action summary recitation — the part identifying this particular judgment "constitute[d] theentry of the judgment," Rule 58(c) (emphasis added), against Alfa itself. Because the "separate written document," Rule 58(a), was signed by the trial judge, it was sufficient as a judgment against Alfa. Rule 58(b). However, because the trial judge did not sign or initial the 1/11/2001 case action summary entry or any discrete document reciting *Page 153 
a dismissal without prejudice of the plaintiffs' claims against English, Rule 58 does not accord any legal status whatsoever to the recitation of a dismissal without prejudice of the plaintiffs' claims against English at the end of that case action summary entry. Rather, that particular recitation is a nullity.Hillegass v. State, 795 So.2d 749, 751 (Ala.Civ.App. 2001). Therefore, even though Alfa did not, either before the trial court or on original submission to this Court, challenge that part of that case action summary entry, it does not foreclose Alfa from arguing that the plaintiffs' claims against English were dismissed with prejudice.
In the absence of a contrary order compliant with Rule 58, several features of this case prompt us to treat the exchange between the trial judge and counsel as an effective dismissal of the plaintiffs' claims against English with prejudice. First, the record is undisputed that the plaintiffs did orally move the trial court for such a dismissal. Second, the trial judge orally impliedly granted the dismissal. Third, all of the parties, including the plaintiffs, treated the exchange between the trial judge and counsel as a dismissal of the claims against English with prejudice. Fourth, if that exchange itself did not effect a dismissal with prejudice, the subsequent proceedings consistent with the exchange achieved the same result. We will explain this fourth feature.
The omission of the claims against English from the jury charge was tantamount to a JML for English and against the plaintiffs.Regions Bank v. Plott, 897 So.2d 239, 243-44 (Ala. 2004). Such a judgment would have constituted an adjudication on the merits in favor of English and against the plaintiffs, just like a dismissal with prejudice. See Jefferson County v. City ofHueytown, 656 So.2d 382, 385 (Ala. 1995). Further, Alfa cites us to the case of Poston v. Gaddis, 372 So.2d 1099, 1101 (Ala. 1979):
 "It is thus we conclude that when no evidence is presented concerning a claim, the court's oral charge to the jury makes no mention of such a claim and judgment is rendered on all other issues presented and covered by the oral charge, then the judgment will be considered a final judgment as to all issues. On the other hand, if a claim is to be adjudicated in a separate proceeding, the record must reflect an order of severance or an order for a separate trial entered prior to judgment. In the absence of such an order in this situation, the judgment will be deemed a final judgment on all issues pleaded and any claims which are not specifically disposed of in the judgment will be deemed to have been rejected or denied."
(Citations omitted; emphasis added.) Thus, if, in a case of claims to be tried by a jury, like the case now before us, the trial court does not of record formally reserve or sever a claim for separate disposition, the omission of that claim from the judgment actually entered will be deemed a judgment on the merits of that claim adverse to the claimant. Id. Such a judgment pursuant to such a jury trial is distinguishable from a judgment pursuant to a bench trial, which may, under some circumstances, address and adjudicate claims serially without a formal order of severance. See e.g. Posey v. Posey, 614 So.2d 1041, 1042 (Ala. 1993), and Malone v. Gainey, 726 So.2d 725, 726 (Ala.Civ.App. 1999).
Cumulatively, we acknowledge Oswalt v. Scripto, Inc.,616 F.2d 191, 195 (5th Cir. 1980):
 "Nor are we deterred from finding a stipulated dismissal by the fact that there is no formal stipulation of dismissal entered in the record by the Oswalts or Scripto. This court approved a district *Page 154 
court's finding that an oral dismissal of claims against defendants in the course of a trial was sufficient to constitute a dismissal under Rule 41(a)(1)[, Fed.R.Civ.P.,] even though there was no formal dismissal or stipulation filed with the clerk. Harkless v. Sweeny Independent School District of Sweeny, Texas, 554 F.2d 1353, 1360 (5th Cir. 1977), aff'g in part, 388 F.Supp. 738, 749 (S.D.Tex. 1975). The Tenth Circuit in Pipeliners Local [Union No. 798, Tulsa, Oklahoma v. Ellerd, 503 F.2d 1193 (10th Cir. 1974),] has found that a verbal stipulation of dismissal in open court sufficed for the purpose of Rule 41(a)(1)(ii). Compare, [Battle v.] Municipal Housing Authority for the City of Yonkers, [53 F.R.D. 423 (S.D.N.Y. 1971)]."
We rely only tentatively and partially on Oswalt, as we would prefer compliance with Rule 58, for all of the virtues and benefits of following the rules.
For the reasons we have explained, we deem the plaintiffs' claims against Alfa agent English — the claims against him for fraud and negligent or wanton failure to procure insurance — to have been dismissed with prejudice by the exchange between the trial judge and counsel at the beginning of the trial. For the effect of this dismissal with prejudice, Alfa cites us to Barlowv. Liberty National Life Insurance Co., 708 So.2d 168
(Ala.Civ.App. 1997).
In Barlow, the defendant Liberty National asserted in its cross-appeal that the plaintiff's dismissal with prejudice of his claims against the agent of Liberty National entitled Liberty National to a JML on the plaintiffs' respondeat-superior tort claims against Liberty National. The Court of Civil Appeals explained and held:
 "`A dismissal of an action with prejudice constitutes an adjudication on the merits that bars any subsequent litigation.' Calhoun v. Pennsylvania Nat'l Mutual Casualty Ins. Co., 676 So.2d 1332, 1334
(Ala.Civ.App. 1996) (citations omitted).
"Our supreme court has held as follows:
 "`"[W]hen [a] principal and his agent are sued in [a] joint action in tort for misfeasance or malfeasance of the servant, and his liability for the conduct of said servant is under the rule of respondeat superior, a verdict in favor of the servant entitles the master to have the verdict against him set aside."'
 "Larry Terry Contractors, Inc. v. Bogle, 404 So.2d 613, 614 (Ala. 1981) (quoting Louisville N.R. Co. v. Maddox, 236 Ala. 594, 600, 183 So. 849, 853
(1938)). Therefore, we conclude that the trial court erred in not dismissing Barlow's respondeat superior claims against Liberty National for [the agent's] actions."
708 So.2d at 173. Accord Crete Carrier Corp. v. Adair,792 So.2d 429, 430 (Ala.Civ.App. 2000). The same principles apply to the case now before us. The dismissal with prejudice of the claims alleged against English — the torts of fraud and negligent or wanton failure to procure insurance — constituted an adjudication on the merits to the effect that English was not guilty of committing either of those torts. Therefore, Alfa could hardly be guilty of committing those same torts by and through the agency of English and thus could not be vicariously liable for those torts under the doctrine of respondeat superior. Id.
The plaintiffs cite Big B, Inc. v. Cottingham, 634 So.2d 999
(Ala. 1993), USA Petroleum Corp. v. Hines, 770 So.2d 589 (Ala. 1999), Daugherty v. M-Earth of Alabama, Inc., 519 So.2d 467
(Ala. 1987), and Salter v. A. Fraser Pattillo, Jr., Inc.,519 So.2d 930 (Ala. 1988), for the proposition that the dismissal with prejudice of the tort claims against the agent English did not exonerate *Page 155 
the principal Alfa from vicarious liability for those alleged torts. These four precedents, however, are distinguishable from the case now before us.
While in each of Cottingham and Hines the trial court, on the plaintiff's motion, dismissed one or more tort claims against the agent and allowed the plaintiff to proceed against the principal, neither case states that the dismissal was with prejudice. For all that appears in either case, the trial court dismissed the tort claim or claims against the agent without prejudice, while in the case now before us the trial court dismissed the tort claims against the agent with prejudice. Although a dismissal without prejudice does not constitute an adjudication on the merits, Smith v. Union Bank Trust Co.,653 So.2d 933, 935 (Ala. 1995), a dismissal with prejudice does,Hammermill Paper Co. v. Day, 336 So.2d 166, 168 (Ala. 1976).
In Daugherty and Salter the pertinent issue was whether a pro tanto release of an agent from tort claims exonerated the principal from vicarious liability for those alleged torts. Each release expressly reserved the tort claims against the principal. In each case this Court held that it was bound by § 12-21-109, Ala. Code 1975, to honor the express reservation of the tort claims against the principal. Because the plaintiffs in the case now before us did not, in any release governed by § 12-21-109, expressly reserve their tort claims against Alfa, those tort claims are not preserved by the holding of Daugherty andSalter, and likewise those two precedents are not affected by the holding exonerating Alfa from the tort claims in the case now before us.
Thus, we conclude that the dismissal with prejudice of the tort claims against the agent English exonerated the principal Alfa from vicarious liability for those alleged torts and entitled Alfa to a JML on the tort claims. Accordingly, the trial court erred in denying the motion by Alfa for a JML in its favor on those two claims — the claims for fraud and negligent or wanton failure to procure insurance alleged against both agent English and Alfa.
This conclusion does not impair the right of the plaintiffs to prosecute their remaining claim — their claim against Alfa for breach of its oral contract to issue policies providing for a 15-year pay up. The plaintiffs alleged this claim only against Alfa and not against English. The plaintiffs' motion to dismiss the claims they alleged against English did not include this contract claim, as they alleged it only against Alfa.
While, before the trial court, Alfa challenged English's authority to make the oral contract on behalf of Alfa, Alfa neither raises nor briefs this issue on appeal before this Court. Thus, Alfa has abandoned that challenge. Tucker v.Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala. 2003).
Similarly, while, before the trial court, Alfa invoked the dismissal with prejudice of the claims against English as a ground for a JML in favor of Alfa on all of the plaintiffs' claims, including their contract claim, Alfa does not, on appeal to this Court, brief that ground for a JML as it would apply to the plaintiffs' contract claim. Alfa makes no argument and cites no authority to us for the proposition that the dismissal with prejudice of the tort claims against English exonerated Alfa from the contract claim. (See Willis v. Parker, 814 So.2d 857, 864
(Ala. 2001), and Pate v. T-Square, Inc., 545 So.2d 70, 71
(Ala.Civ.App. 1989), for an explanation of the incidence of liability on a principal, its agent, or both on a contract made by the agent for the principal.) Therefore, Alfa has abandoned its contention that the dismissal *Page 156 
with prejudice of the tort claims against English entitled Alfa to a JML on the plaintiffs' contract claim against Alfa. Tucker,supra.
 C. Justifiable Reliance
Our holding that the dismissal with prejudice of the claims against English entitled Alfa to a JML on the plaintiffs' two tort claims moots the issue of whether the plaintiffs proved the essential element of justifiable reliance in their fraud claim, one of those two tort claims.
 D. Merger
In Alfa Mutual Insurance Co. v. Northington, 561 So.2d 1041
(Ala. 1990), as in the case now before us, Alfa contended that the trial court erred in denying Alfa a JML on the plaintiff's claim for breach of an oral contract. The ground of the motion by Alfa was that the plaintiff based this claim on oral statements of the Alfa agent that had merged into the subsequently issued policy. This Court held:
 "The parol evidence rule is based upon the idea that a completely integrated writing, executed by the parties, contains all of the stipulations, engagements, and promises that the parties intended to make, and that all of the previous negotiations, conversations, and parol agreements are merged into the terms of the instrument. In Alabama, however, it has been generally recognized that parties to a lawsuit may try their case on evidence that would otherwise be inadmissible upon proper objection and that where evidence violative of the parol evidence rule is admitted without objection, it may be considered and allowed such force and effect as its weight entitles it in construing the agreement of the parties. Because the testimony concerning oral negotiations between [the Alfa agent] and [the plaintiff-insured] was admitted into evidence without objection, the trial court did not err in denying Alfa's motion for a directed verdict and its motion for a judgment notwithstanding the verdict."[7]
561 So.2d at 1044 (citations omitted).
In the case now before us, Alfa contends that the oral representation by English that the policies would pay up in 15 years was merged into the written policies that were subsequently issued and that, therefore, Alfa was entitled to a JML on the plaintiffs' claim for breach of an oral contract. However, Alfa failed to object on the ground of the parol evidence rule to Magnolia Jackson's testimony that English orally represented that the policies would pay up in 15 years. Therefore, Alfa was not entitled to a JML on the ground of merger on the plaintiffs' claim for breach of an oral contract. Northington, supra.
 E. Good Count/Bad Count
While the trial court did not err in denying Alfa a JML on the plaintiffs' breach-of-contract claim, the trial court did err in denying Alfa a JML on the plaintiffs' tort claims. Thus, the trial court submitted two sufficiently challenged "bad counts"[8] and one "good count" to the jury. *Page 157 
Because the jury returned a general verdict for the plaintiffs and the two "bad counts" may have infected this verdict, we must reverse the judgment entered upon that verdict. Larrimore v.Dubose, supra.
 F. Issues Regarding Damages
Our reversal of the judgment for the plaintiffs moots the parties' respective issues of whether or not the damages were excessive, the remittitur proper, or the allocation to the nonparty legal.
 Conclusion
We reverse the judgment for the plaintiffs and remand the case to the trial court for entry of a JML in favor of Alfa on the plaintiffs' tort claims and a new trial on the plaintiffs' breach-of-contract claim. We dismiss the plaintiffs' cross-appeal because the issues it raises are moot.
1001854 — OPINION OF NOVEMBER 19, 2004, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
1002002 — OPINION OF NOVEMBER 19, 2004, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; APPEAL DISMISSED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] BMW of North America, Inc. v. Gore, 517 U.S. 559,116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986); Green Oil Co. v. Hornsby,539 So.2d 218 (Ala. 1989).
[2] A flexible-premium adjustable-benefit life insurance policy is a universal life insurance policy. Kenneth Black, Jr. Harold D. Skipper, Jr., Life Insurance 126 (Prentice Hall, Inc. 12th ed. 1994).
[3] The plaintiffs also alleged against only Alfa claims for the negligent or wanton hiring and supervision of English. The trial court entered a summary judgment for Alfa on those claims before trial, and the plaintiffs have not cross-appealed the summary judgment on those claims.
[4] There were two trials. A mistrial terminated the first trial when a juror was disqualified after jury deliberations had commenced. The exchange between the trial judge and counsel quoted here in the text of this opinion occurred immediately before jury selection for the second trial.
[5] Because the plaintiffs filed their lawsuit before March 14, 1997, the justifiable-reliance standard applied in this case.Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997).
[6] Alfa vice president Charles Labriola admitted that Alfa universal life policies like the ones the plaintiffs bought did not have a "vanishing premium" option. Alfa states in brief that "it is undisputed that none of the paperwork issued in connection with this transaction suggests that the plaintiffs' policies had, or were presented as having, a `vanishing premium' feature." Appellant's brief at p. xvi (emphasis omitted). Yet, despite admitting that this case is not based on policies that contained a "vanishing premium" feature or on representations that the policies either did or would contain a "vanishing premium" feature, Alfa apparently perceives no contradiction in arguing that this is a "vanishing premium" case.
[7] Rule 50, Ala. R. Civ. P., as amended in 1995, renamed the "motion for a directed verdict" as a "motion for judgment as a matter of law" and renamed the "motion for a judgment notwithstanding the verdict" as a "renewed motion for a judgment as a matter of law."
[8] Ground 122, quoted supra, of the motion for JML, as argued before the trial court on the record, was sufficiently specific to the tort claims, the "bad counts." "[W]e have in this appeal a `good count — bad count' situation analogous to that inAspinwall v. Gowens, 405 So.2d 134 (Ala. 1981). See also LifeIns. Co. of Georgia v. Smith, 719 So.2d 797 (Ala. 1998). Here, [the defendants] submitted motions for a JML specificallydirected to the various claims; those motions were denied."Waddell Reed, Inc. v. United Investors Life Ins. Co.,875 So.2d 1143, 1165 (Ala. 2003) (emphasis added).