Rel: December 12, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0368

————————————————

### Leonard L. Hixon

### v.

### Premier Medical Group, Inc.

### Appeal from Mobile Circuit Court
### (CV-24-903106)

COOK, Justice.

On December 5, 2022, Leonard L. Hixon underwent a medical procedure at the Springhill Medical Center to remove a mass that had

developed on the right side of his face. Dr. Kent L. Burton and other medical professionals performed the procedure. Afterward, Hixon allegedly suffered complications, including facial paralysis on the right side of his face.

In December 2024, two years after that procedure took place, Hixon sued, among others, Premier Medical Group, Inc. ("Premier"), in the Mobile Circuit Court. In his complaint, Hixon alleged claims pursuant to the Alabama Medical Liability Act ("the AMLA"), § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975. Specifically, he alleged, among other things, that Premier was vicariously liable for the actions of Dr. Burton under the doctrine of respondeat superior ("the vicarious-liability claim").

Although Dr. Burton was also listed as a named defendant in the caption of the complaint, he was not formally listed as a "party" within the complaint. Additionally, Hixon did not serve a summons and complaint on Dr. Burton.

In January 2025, Hixon amended his complaint to formally include Dr. Burton as a party in his allegations. Hixon then served Dr. Burton with a summons and copy of that amended complaint.

In response, Dr. Burton moved to dismiss the claims against him

with prejudice on the basis that Hixon's claims against him in the amended complaint were time-barred because Hixon had failed to bring them within two years of his alleged injuries as required by the AMLA. After Hixon's counsel filed a response stating "no opposition" to Dr. Burton's motion, the trial court dismissed the claims against him with prejudice. In doing so, however, the trial court noted that the case remained active as to all other defendants in the action, including Premier.

With Dr. Burton no longer a party to the action, Premier moved for a summary judgment in its favor on the basis that, under the doctrine of respondeat superior, a principal cannot be held vicariously liable for the conduct of its agent when the claims against the agent have been dismissed with prejudice. Hixon opposed Premier's motion on the basis that the trial court had made clear in its order dismissing the claims against Dr. Burton that the case remained active against all remaining defendants, including Premier. He also filed a separate motion pursuant to Rule 60, Ala. R. Civ. P., in which he asked the trial court to correct what he described as a "clerical mistake" in its order by clarifying that it had dismissed the claims against Dr. Burton <u>without</u> prejudice.

3

Following a hearing, the trial court granted Premier's motion. Hixon appealed. For the reasons stated below, we affirm that judgment.

Facts and Procedural History

I. Hixon's Original and Amended Complaints

As stated above, on December 5, 2022, Hixon underwent surgery to have a mass removed from the right side of his face. Although Hixon apparently began experiencing complications, including facial paralysis, soon after that surgery, it was not until two years later on December 2, 2024, that Hixon brought the present action against 11 named defendants, including Premier.

While Dr. Burton was listed as a named defendant in the original complaint's caption, he was not listed in the "Parties" section of the complaint. Additionally, although Hixon served Premier and the other 9 defendants with a copy of the summons and his complaint, he failed to serve Dr. Burton. [1]

---

[1]The other defendants were (1) Southern Medical Health Systems, Inc.; (2) Specialtycare, Inc.; (3) Specialtycare IOM Services, LLC; (4) Remote Neuromonitoring Physicians, PC; (5) Cynthia Naylor, CNIM; (6) Saraswati Muttal, M.D.; (7) Physnergy, LLC; (8) Physnergy Medical Services LLC; and (9) Ashik Jivan, M.D.

On January 14, 2025, Hixon filed an amended complaint in which he formally identified Dr. Burton in the "Parties" section. It is undisputed that he then served Dr. Burton with a copy of the summons and the amended complaint.

II. Dr. Burton's Motion to Dismiss Hixon's Claims Against Him

After being served with Hixon's amended complaint, Dr. Burton moved to dismiss the claims against him pursuant to Rule 12(b)(6), Ala. R. Civ. P., on January 29, 2025. In his motion, Dr. Burton asserted that Hixon's claims were barred by the AMLA's two-year statute of limitations, see § 6-5-482, Ala. Code 1975.[2] The trial court set Dr.

─────────────

[2]That Code section provides, in relevant part:

"(a) All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission, or failure to cure giving rise to a claim which occurred before

5

Burton's motion for a hearing on February 28, 2025.

At some point, Hixon's counsel called Dr. Burton's counsel and stated that he agreed to let Dr. Burton out of the lawsuit. Hixon's counsel then asked Dr. Burton's counsel to contact the trial court and ask it to take Dr. Burton's motion to dismiss off the docket. Dr. Burton's counsel declined that request, stating that he was not comfortable with contacting the trial court on Hixon's behalf and that it would be "cleaner" if Hixon's counsel filed a response to the pending motion. The parties disagree as to whether anything else was said or agreed to during that telephone call.

On February 7, 2025, Hixon filed his response to Dr. Burton's motion to dismiss in which he stated that he did "not oppose Dr. Burton's Motion to Dismiss" and asked the trial court to "dismiss Dr. Burton from this action." He also asked the trial court to cancel the hearing on Dr. Burton's motion "due to mootness." Hixon's filing did not include any mention of a meeting or agreement with Dr. Burton's counsel on the matter.

---

September 23, 1975, shall not in any event be barred until the expiration of one year from such date."

On February 12, 2025, the trial court entered an order granting Dr. Burton's motion and dismissed the claims against him "with prejudice." In support of its order, the trial court explained that Dr. Burton's dismissal was warranted because Hixon's claims against him were time-barred under § 6-5-482 of the AMLA and because Hixon did not oppose Dr. Burton's dismissal. The trial court also made clear, however, that the "[c]ase remains ACTIVE as to all other defendants." (Capitalization in original.)

### III. Premier's Summary-Judgment Motion

After the trial court dismissed the claims against Dr. Burton, Premier filed a motion for a summary judgment in which it asserted that Hixon's only allegation against it was that Premier "is vicariously liable for the actions and inactions of its employee[] or agent[]," Dr. Burton, "under the doctrine of respondeat superior." Because the claims against its agent, Dr. Burton, had been dismissed with prejudice, Premier argued that, as a matter of law, it could not be found vicariously liable and that the vicarious-liability claim therefore had to be dismissed.

That same day, Hixon filed his response in opposition to Premier's summary-judgment motion in which he argued that his decision to allow

7

Dr. Burton to be dismissed from his action "unambiguously" showed that he did not intend for Premier to be dismissed from his action. Further, Hixon argued that the trial court "understood" his position, which, he said, was evidenced by the trial court's language in the dismissal order stating that the case was "ACTIVE as to all other defendants." Thus, Hixon argued that the intent of the parties, coupled with the trial court's understanding, showed that "the dismissal of [Dr.] Burton was a pro tanto release of an agent with the rights against the principal[, Premier,] reserved."

IV. Hixon's Rule 60, Ala. R. Civ. P., Motion

While Premier's summary-judgment motion was pending, Hixon filed a Rule 60, Ala. R. Civ. P., motion for relief in which he asked the trial court to correct what he described as a "clerical mistake" in its order dismissing the claims against Dr. Burton with prejudice. Specifically, Hixon asked the trial court to "clarify that the dismissal of Dr. Burton was made without prejudice under an interlocutory order, not as a final appealable judgment under Rule 54(b)[, Ala. R. Civ. P.,] that would operate adversely to [his] claims against Defendant Premier Medical Group, Inc." (Emphasis added.) He further argued that a failure to make

that clarification "would operate adversely to the Court's express determination that the case remains 'ACTIVE' as to all other defendants, including Dr. Burton's principal, Defendant Premier Medical Group, Inc."

On February 26, 2025, Premier filed its response in opposition to Hixon's Rule 60 motion in which it argued that the trial court's dismissal of the claims against Dr. Burton with prejudice was proper because a dismissal under the statute of limitations operates as a judgment on the merits. According to Premier, once a judgment on the merits has been entered in favor of the agent, the principal can no longer be liable for the agent's actions under a vicarious-liability theory. Finally, Premier argued that the order's language that the "[c]ase remains ACTIVE as to all other defendants" merely acknowledged the procedural status at that point of the litigation and did not constitute a guarantee that Premier would remain a defendant until trial even if there was no cognizable claim against it.

After Hixon filed his reply, the trial court held a hearing on Hixon's Rule 60 motion on February 28, 2025. During that hearing, the trial court specifically clarified that it had added the phrase the "[c]ase remains

ACTIVE as to all other defendants" to its order to make clear that it was not dismissing all the defendants from the action at that <u>specific</u> point in the litigation:

> "THE COURT: Okay. Dr. Burton was dismissed. The parties agreed he should be dismissed. I got a proposed order from the defense and the only change that I made -- <u>and I do this with every order</u> -- I learned the hard way that if I don't put the last paragraph that says the case remains active as to all other defendants, my clerks don't read the whole order, and they dismiss the whole case. It happened to me a couple of times. So now I'm always sure, if there's some sort of pro tanto dismissal … that I put that in the end. So I probably added that paragraph.
>
> "[Premier's counsel]: You did, Your Honor, and that's standard when somebody is dismissed. I've seen that in every court where they do that for administrative reasons."

(Emphasis added.)

Despite that clarification, Hixon's counsel asked the trial court to modify its order to state that the order dismissing the claims against Dr. Burton formally reserved his claims against all the remaining defendants, including Premier, so that that order could serve as a basis for denying Premier's summary-judgment motion:

> "[Hixon's counsel]: … So the Court inserted that language on its own, and it understood that, you know, there was an agreement that Dr. Burton would be dismissed …. I think the Court understood that, you know, I will put this language in there so it's clear to everybody that the case is

going to remain active and proceed against all the remaining Defendants. And so that language, I believe, severs the claims against all other Defendants for separate disposition.

"....

"... [T]he Plaintiff is asking the Court ... to just clarify in a revisionary order that the disposition of Dr. Burton does indeed formally sever and reserve the claims against all of the Defendants, including Premier.

"So if the Court were to grant this relief, then the record would unambiguously speak the truth of the Court's disposition. ...

"....

"... [I]f [Premier's] motion for summary judgment is heard without this relief, the intent of the Court's order will likely be confused, and with a clarification, I think Premier should understand it does not have a basis for summary judgment ....

"....

"... The proposed order submitted with the Plaintiff's reply brief would serve to remove any justification for Premier's motion for summary judgment, and it would eliminate any potential argument for appellate review ...."

(Emphasis added.) The trial court declined Hixon's request to further modify its order and made clear that Premier and the other remaining defendants in the action were free to file whatever motions they deemed necessary at that point in the litigation:

11

"THE COURT: ... I think we all agree but agree differently that ... when I entered this order that we're here about, if you would have asked me when I hit enter, I would have said everybody else is still in.

"....

"And I don't know how it could be understood any other way. <u>Now, after that, you know, procedurally whatever motions are made legally, you know, of course [the remaining Defendants] have a right to make, but I'm making no opinion [on that] whatsoever</u> .... I don't think that <u>this order</u> that I entered has any impact on, <u>as of that date</u>, your claims against Premier. ...

"....

"... I haven't read the summary judgment, but let me say this: ... <u>when I entered this order, whoever the other Defendants are, Premier and whoever else, they're still in the case to be dealt with.</u>

"....

"<u>By a separate disposition</u>.

"....

"... So I don't see any need to revisit the order in any way. I don't think the 'with' or 'without prejudice' ... [is] not going to change any position that we're in now. I think that it is true that the statute [of limitations] had run [as to Dr. Burton] and y'all agreed with that, that it is with prejudice, you cannot bring the claim again. ...

"....

"<u>So the motion to clarify or whatever under whichever</u>

rule is denied ….

"[Premier's counsel]: Just one point of clarification. Obviously, with the meaning of your statement within the order … all Defendants could seek dismissal by other resolution or argument would also include what we've raised and set to be heard in our motion for summary judgment.

"….

"… Only meaning that we can still argue the Premier motion [for summary judgment] later.

"THE COURT: Of course, I mean, as to that party. In the law, every claim against every party is different."

(Emphasis added.)

After denying Hixon's Rule 60 motion, the trial court then scheduled a hearing on Premier's summary-judgment motion for April 11, 2025.

V. Supplemental Filings and the Hearing on Premier's Summary-Judgment Motion

Hixon thereafter filed a supplement to his response in opposition to Premier's summary-judgment motion in which he noted that, as of the entry of the trial court's dismissal order, all the remaining defendants besides Dr. Burton remained in the case for "separate disposition." According to Hixon, that language indicated that the claims against all other defendants in the action, including Premier, were "formally of

13

record reserved and severed for separate disposition" and, by itself, was a reason to deny Premier's motion.

Hixon later filed a second supplement to his response in opposition to Premier's summary-judgment motion in which he argued that the trial court's statement during the hearing on his Rule 60 motion clarifying that the case remained active against the remaining defendants in the lawsuit, including Premier, constituted the "law of the case." According to Hixon, by making such a clarification, the trial court "unequivocally affirmed that, by virtue of its pro tanto dismissal of Dr. Burton, … the claims against all other parties, including Defendant Premier, were severed or reserved for separate disposition." Per the "law-of-the-case" doctrine, Hixon argued, the trial court was bound to follow the same rule for subsequent stages of the litigation, meaning that it had an obligation to deny Premier's summary-judgment motion and keep it in the litigation.

In its reply to Hixon's supplemental filing, Premier argued that the "law-of-the-case" doctrine did not apply because the trial court's order, and subsequent clarification, that the case "remain[ed] active" as to all other defendants did not change the fact that it could not be vicariously

14

liable for Dr. Burton's acts or omissions under the doctrine of respondeat superior. Premier further argued that Hixon had failed to otherwise reserve the vicarious-liability claim for separate disposition because he had not expressly done so as part of the pro tanto release of Dr. Burton from the action.

The trial court held a hearing on Premier's motion on April 11, 2025. During that hearing, Premier argued that, once the claims against an agent are dismissed with prejudice based on the statute of limitations, a decision on the merits has been made as to those claims against the agent and, thus, the principal cannot be separately liable for any actions committed by the dismissed agent. Further, Premier noted there was never any express agreement between the parties to reserve Hixon's vicarious-liability claim against Premier as the principal as part of the pro tanto release of Dr. Burton from the lawsuit.

The record before us indicates that, in response, Hixon reiterated his assertion that the trial court "understood" that the pro tanto release concerning Dr. Burton also operated to reserve his vicarious-liability claim against Premier, which, he said, was evidenced by the trial court's statement in its dismissal order that the "[c]ase remains ACTIVE as to

all other defendants." He also reiterated his assertion that the "law-of-the-case" doctrine required Premier to stay in the case.

After hearing the arguments from both parties, the trial court determined that it was not "presented" with anything showing that "the parties had agreed in some manner, whether by letter or filing, or an agreement on the record or off the record," to reserve Hixon's vicarious-liability claim against Premier. As a result, because "the law is that … a principal cannot be held liable under respondeat superior or vicarious liability when an agent has been dismissed with prejudice," the trial court granted Premier's summary-judgment motion. The trial court thereafter certified that judgment as final under Rule 54(b), Ala. R. Civ. P., and this appeal followed.

Standard of Review

In reviewing a summary judgment, we apply the following standard of review:

> " 'This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949,

16

952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce "substantial evidence" as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989).'"

Hundley v. J.F. Spann Timber, Inc., 962 So. 2d 187, 191 (Ala. 2007) (quoting Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004)).

## Discussion

On appeal, Hixon argues, among other things, that the trial court improperly granted a summary judgment in favor of Premier because, he says, the pro tanto release of Dr. Burton from his lawsuit reserved his vicarious-liability claim against Premier. According to Hixon, this is evident from the trial court's order dismissing the claims against Dr. Burton which stated that the "[t]he case remains ACTIVE as to all other defendants." By including that language in its dismissal order, Hixon contends, the trial court affirmed his intention to have the vicarious-

17

liability claim against Premier remain pending, meaning that Premier was required to remain in the litigation. Based on the foregoing, Hixon contends that the summary judgment in favor of Premier is due to be reversed.

The decisive issue in this appeal is whether Hixon's vicarious-liability claim against Premier was reserved following the dismissal of the claims against Dr. Burton. Our Court has previously explained that, generally, a dismissal with prejudice of claims against an agent "constitute[s] an adjudication on the merits to the effect that [the agent] was not guilty of committing [the alleged torts]," such that "[the principal] could not be vicariously liable for those torts under the doctrine of respondeat superior." Alfa Life Ins. Corp. v. Jackson, 906 So. 2d 143, 154 (Ala. 2005).

Thus, in general, the principal cannot be vicariously liable after a dismissal with prejudice of the claims against the agent in the same suit "unless in conjunction with the dismissal with prejudice the parties entered into a settlement [or pro tanto] agreement that expressly reserved the claimant's right to pursue claims against the principal." Hundley v. J.F. Spann Timber, Inc., 962 So. 2d 187, 193 (Ala. 2007). Such

pro tanto releases can sometimes be part of a paid settlement of claims between the plaintiff and one defendant. See Ex parte Goldsen, 783 So. 2d 53, 55-57 (Ala. 2000) (recognizing that one defendant's paid settlement agreement with the plaintiff sufficiently qualified as a pro tanto release that must be credited against any judgment against another defendant, even if the settling defendant is later found not liable); see also Campbell v. Williams, 638 So. 2d 804, 812 (Ala. 1994) (acknowledging that a joint tortfeasor's paid settlement with the plaintiff sufficiently qualified as a pro tanto release that entitled the remaining tortfeasor to a setoff against the verdict).

A pro tanto release agreement made by counsel must be in writing or on the record in court. Compare § 12-21-109, Ala. Code 1975 ("All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties thereto.") with § 34-3-21, Ala. Code 1975 ("An attorney has authority to bind his or her client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court." (emphasis added));

19

Rule 47, Ala. R. App. P. (requiring agreements between parties or counsel to be in writing and signed by the party to be bound or made in open court); Cincinnati Ins. Cos. v. Barber Insulation, Inc., 946 So. 2d 441, 449 (Ala. 2006) (holding that § 34-3-21 governs trial-level settlement agreements, that Rule 47 governs appellate-level settlement agreements, and that an attorney's trial-level settlement agreement during mediation was unenforceable because there was no writing or entry on the trial court's minutes); and Harris v. Preskitt, 911 So. 2d 8, 11-14 (Ala. Civ. App. 2005) (holding that written correspondence between counsel, including a pro tanto release, satisfied § 34-3-21 and created a binding settlement agreement).

Here, the record indicates that Dr. Burton moved to dismiss Hixon's claims against him pursuant to § 6-5-482 of the AMLA and Rule 12(b)(6). After the trial court set that motion for a hearing, Hixon's counsel allegedly notified Dr. Burton's counsel that Hixon agreed to let Dr. Burton out of the lawsuit. There is nothing in the record indicating that the parties discussed or agreed to what would happen to Hixon's vicarious-liability claim against Premier once Dr. Burton was dismissed from the lawsuit.

Additionally, when Hixon filed his response "not oppos[ing]" Dr. Burton's motion to dismiss, he did not expressly indicate that he wanted to reserve his vicarious-liability claim against Premier. Instead, he simply "request[ed] that the [trial] [c]ourt dismiss Dr. Burton from this action." There is nothing in the record indicating that there was a written agreement between counsel for Hixon and counsel for Dr. Burton with an "express reservation" of the vicarious-liability claim against Premier. Alfa Life Ins. Corp., 906 So. 2d at 155. Nor was there a similar verbal agreement in "the minutes of the court." § 34-3-21 (emphasis added). Thus, there was no pro tanto release between the parties expressly reserving Hixon's vicarious-liability claim against Premier.

Based on Hixon's lack of opposition to Dr. Burton's dismissal and the fact that Hixon's claims against Dr. Burton were time-barred under the AMLA's statute of limitations, see § 6-5-482, the trial court decided to dismiss the claims against Dr. Burton with prejudice. That determination constituted an adjudication on the merits that exonerated Dr. Burton from liability. See McGilvray v. Perkins, 407 So. 3d 283, 289 (Ala. 2024) (citing Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995)) (explaining that a judgment of dismissal based on the statute of

21

limitations is treated the same as a judgment determining that there is a failure to prove substantive liability, which is a judgment on the merits). As the legal principles discussed above make clear, generally, this would preclude the principal -- here, Premier -- from being held vicariously liable for its agent's conduct unless an agreement existed between the parties that expressly reserved Hixon's right to pursue his vicarious-liability claim against Premier. See Hundley, 962 So. 2d at 193.

Nevertheless, Hixon contends that he expressly reserved his right to pursue his vicarious-liability claim against Premier and that his intention was confirmed by the trial court in a couple of different ways. First, he notes that the trial court expressly stated in its dismissal order that the "[c]ase remains ACTIVE as to all other defendants." Second, he notes that the trial court's statement during the hearing on his Rule 60 motion that "Premier and whoever else, they're still in the case to be dealt with" by "a separate disposition" also confirmed the trial court's understanding that Hixon intended to reserve his right to pursue his vicarious-liability claim against Premier. We disagree.

Putting aside the absence of any agreement by Dr. Burton to a pro tanto release, the trial court's dismissal order also does not evidence that

there was an "express reservation" of Hixon's vicarious-liability claim against Premier.[3] Although the trial court's dismissal order stated that the "[c]ase remains ACTIVE as to all other defendants," the trial court made clear during its hearing on Hixon's Rule 60 motion that its purpose in adding the phrase "[the c]ase remains ACTIVE as to all other defendants" to its order dismissing the claims against Dr. Burton with prejudice was to reflect the status of the case at that point in the litigation and nothing else. The trial court did not state that that portion of its order should be understood as stating its understanding that Hixon had expressly reserved his right to pursue his claims against the other defendants, including his vicarious-liability claim against Premier.

---

[3]To be clear, to continue pursuing claims against nonsettling joint tortfeasors, the plaintiff must reach an agreement with the settling joint tortfeasors that expressly reserves the right for the plaintiff to pursue claims against the nonsettling tortfeasors. See, e.g., § 12-21-109, Ala. Code 1975; § 34-3-21, Ala. Code 1975; 2 Ally Windsor Howell, Trial Handbook for Alabama Lawyers § 44:12 (3d ed. 2007) ("[A]n injured person has the right to accept a pro tanto or partial satisfaction from one joint tort feasor, release that tort feasor, and proceed against any other joint tort feasors. … A pro tanto release must clearly reserve the right to proceed against the other joint tort feasors, or all can be deemed to have been released."); Elisabeth A. French, Julia T. Cochrun & LaBella S. McCallum, Circuit Civil Trial and Evidence Practice Pointers, 82 Ala. Law. 31, 34 (Jan. 2021) ("Plaintiffs' counsel should be sure to reserve the right to proceed against remaining joint tortfeasors when executing a pro tanto release to avoid any unintentional releases.").

Additionally, although the trial court also said that Premier and the other defendants were "still in the case to be dealt with" by "separate disposition," that statement does not show that Hixon had expressly reserved his right to pursue his vicarious-liability claim against Premier. Our caselaw has recognized a reservation of claims against a principal in a release only when there is clear evidence that the pro tanto release expressly reserved the claims against that joint tortfeasor. See Daugherty v. M-Earth of Alabama, Inc., 519 So. 2d 467, 468-69 (Ala. 1987) (holding that a pro tanto release must expressly reserve rights against other tortfeasors in order to be effective and is to be given effect according to its terms); see also Salter v. A. Fraser Pattillo, Jr., Inc., 519 So. 2d 930, 931-32 (Ala. 1988) (holding that a pro tanto release of an agent does not bar claims against the principal when the release expressly reserves claims against the principal). In fact, during the hearing on Premier's summary-judgment motion, the trial court expressly noted that it had not been "presented" with any evidence indicating that "the parties had agreed in some manner, whether by letter or filing, or an agreement on the record or off the record," that Hixon had expressly reserved his vicarious-liability claim against Premier.

24

Based on the foregoing, there is nothing in the record indicating that a genuine issue of material fact existed as to whether there was an express reservation of the vicarious-liability claim against Premier by Hixon when the claims against Dr. Burton were dismissed with prejudice. See Hundley, 962 So. 2d at 193 (citing Alfa Life Ins. Corp., 906 So. 2d at 154-55). With no such reservation, the legal principles discussed above make clear that Premier cannot be separately liable for Dr. Burton's conduct under the doctrine of respondeat superior.

## Conclusion

For the reasons stated above, the trial court correctly entered a summary judgment in favor of Premier. We therefore affirm that judgment.[4]

AFFIRMED.

Stewart, C.J., and Wise, McCool, and Parker, JJ., concur.

Cook, J., concurs specially, with opinion.

Shaw, J., concurs in the result, with opinion.

---

[4]In light of our holding, the parties' other arguments on appeal need not be addressed. See Jackson Hosp. & Clinic, Inc. v. Murphy, 343 So. 3d 490, 498 n.3 (Ala. 2021) (stating that the Court would pretermit discussion of remaining issues considering the dispositive nature of another issue).

Bryan, Sellers, and Mendheim, JJ., concur in the result.

COOK, Justice (concurring specially).

Although I am the author of the main opinion, I write specially to note an issue not addressed by the parties either at the trial-court level or on appeal -- that is, whether the dismissal with prejudice of the claims against an agent based upon a nonmerits defense, like the statute of limitations, also requires the dismissal of any claims against the principal based on the doctrine of respondeat superior. I agree with Justice Shaw that this issue is worth careful review, and, as I explain below, there are different approaches that have been taken by states across our country concerning this issue.

Before diving into those approaches, I first observe that, in Alabama, our caselaw generally recognizes that, when a principal is alleged to be vicariously liable for the actions of its agent under the doctrine of respondeat superior, a <u>verdict</u> for the agent entitles the principal to have any verdict against it set aside. See <u>Larry Terry Contractors, Inc. v. Bogle</u>, 404 So. 2d 613, 614 (Ala. 1981) ("'[W]hen [a] principal and his agent are sued in [a] joint action in tort for misfeasance or malfeasance of the servant, and his liability for the conduct of said servant is under the rule of respondeat superior, a <u>verdict</u> in favor of the

27

servant entitles the master to have the verdict against him set aside.'" (quoting Louisville & Nashville R.R. v. Maddox, 236 Ala. 594, 600, 183 So. 849, 853 (1938)) (emphasis added)).[5]

Additionally, as explained in the main opinion, our caselaw recognizes that, when the claims against an agent are dismissed with prejudice during the pendency of an action, that dismissal "operates as [an adjudication] on the merits" of the claims against the agent, ____ So. 3d at ____, which in turn "exonerate[s] the principal … from vicarious liability for those alleged" claims. Alfa Life Ins. Corp. v. Jackson, 906 So. 2d 143, 154-55 (Ala. 2005).

Recently, in Rogers v. Cedar Bluff Volunteer Fire Department, [Ms. SC-2025-0055, Aug. 29, 2025] ____ So. 3d ____ (Ala. 2025), our Court reaffirmed that, under certain circumstances, if the principal proves that an agent would not be liable because he is, for example, immune from liability, the principal likewise cannot be liable under the doctrine of

---

[5]Of course, if there are allegations of actions or omissions of the principal that are entirely independent of the agent's conduct, "a principal may be liable where the agent is exonerated." Larry Terry Contractors, Inc., 404 So. 2d at 614 (citing Otts v. Gray, 287 Ala. 685, 255 So. 2d 26 (1971)).

28

respondeat superior. <u>See</u> <u>Rogers</u>, ____ So. 3d at ____ (recognizing that the town, as the principal, "cannot be liable for the acts or omissions of its volunteer firefighters who are immune from liability under the [Volunteer Service Act]" (citing <u>Gore v. City of Hoover</u>, 559 So. 2d 163, 165 (Ala. 1990) (holding that a city could not be held vicariously liable for the act of a magistrate who was immune from liability), overruled on other grounds, <u>Franklin v. City of Huntsville</u>, 670 So. 2d 848 (Ala. 1995))). This recent reaffirmance in <u>Rogers</u> is particularly noteworthy because, although the agent in that case stipulated to a consent judgment against himself, we affirmed a summary judgment in favor of the principal because the principal demonstrated that the agent could have been immune from liability under the Volunteer Service Act.

Alabama's approach makes logical sense for the ordinary case. If the agent did not commit the tort -- or if the agent did not act negligently -- why should there be respondeat superior liability for the principal? And, why would the courts ever allow inconsistent factual conclusions as to claims against the agent and claims against the principal -- that is, allow one jury to decide that the agent did not commit the tort but allow a second jury to find the principal liable based solely upon an agent's

29

alleged tortious conduct?

But the logic is less obvious if the result for the agent would be because of a nonmerits defense. What if the plaintiff simply never files suit against the agent and thus the statute of limitations expires? What if the plaintiff does file suit against the agent, but does so too late?

In his special writing, Justice Shaw questions whether a dismissal with prejudice of the claims against an agent based on a nonmerits defense, like the statute of limitations, constitutes an adjudication on the "merits" of those claims thus mandating the dismissal of the claims against the principal based on respondeat superior. According to him, a dismissal of a claim based on a nonmerits defense, like the statute of limitations, is not a decision "on the merits" as to whether the agent is liable and, thus, cannot form a basis for barring a claim against the principal based on respondeat superior.

Justice Shaw has made an insightful point; however, I am not certain that Alabama law has yet recognized the distinctions that he is drawing. Given the resolution of this appeal, I have not yet reached a conclusion on whether Alabama should adopt the rule noted by Justice Shaw (and whether this rule would address only statute-of-limitations

defenses) or any of the approaches taken by other states that are discussed below. However, it is certainly an issue that I encourage future litigants to raise and fully brief and which I also encourage the Legislature to consider.

I. States in Favor of Allowing Litigation to Proceed Against the Principal Even When Claims Against its Agent Are Dismissed with Prejudice Based on the Statute of Limitations

I will begin with a discussion of the states that favor allowing litigation to proceed against the principal when claims against its agent are dismissed with prejudice based on the statute of limitations.

The Supreme Court of Mississippi recently considered this issue in a case with facts similar to those in the present appeal. In Methodist Healthcare-Olive Branch Hospital v. McNutt, 323 So. 3d 1051 (Miss. 2021), a plaintiff sued a doctor, alleging medical negligence. The plaintiff also sued the hospital that employed him, asserting that it was vicariously liable for the doctor's negligence. After the claims against the doctor were dismissed with prejudice based on the statute of limitations, the hospital moved for a partial summary judgment in its favor on the plaintiff's vicarious-liability claims. The trial court denied that motion.

On appeal, the Supreme Court of Mississippi held that the

31

dismissal of the claims against doctor based on the statute of limitations did not bar the vicarious-liability claims against the hospital. Id. at 1059. In support of its conclusion, the court explained that a "dismissal on statute of limitations grounds … '… <u>is not in fact an adjudication upon the merits</u>' because … [it] is 'not based on the <u>merits of the case</u>.'" Id. at 1059 (quoting <u>Lee v. Swain Bldg. Materials of New Orleans, Inc.</u>, 529 So. 2d 188, 190-91 (Miss. 1988)) (emphasis added). Rather, the court explained, "'[t]he mere fact that the judgment recited "with prejudice" does not control'" because "'[a] final judgment on the merits is "a judgment based on the <u>evidence</u> rather than on the <u>technical or procedural grounds</u>."'" Id. (citations omitted); (emphasis added).

Other states have adopted similar reasoning in concluding that litigation should proceed against the principal even when claims against the agent are dismissed with prejudice because of a nonmerits defense like the statute of limitations. <u>See</u>, <u>e.g.</u>, <u>Hughes v. Doe</u>, 273 Va. 45, 48-49, 639 S.E.2d 302, 303-04 (2007) (allowing suit to proceed against the principal after concluding that a dismissal with prejudice of the claims against an agent on a ground such as the statute of limitations is not a decision on the merits and thus cannot act as an exoneration of the

32

principal); <u>Cohen v. Alliant Enters., Inc.</u>, 60 S.W.3d 536, 537-38 (Ky. 2001) (holding that an employee's ability to avoid liability on statute-of-limitations grounds does not insulate the employer from vicarious liability and that the employee's negligence may still be established at trial against the employer even if the employee is not a party); <u>Laurence v. Salt River Project Agric. Improvement & Power Dist.</u>, 255 Ariz. 95, 106, 528 P.3d 139, 150 (2023) (overruling prior precedent and holding that dismissal of tort claims against an employee "not actually adjudicated" does not automatically require dismissal of the claim based on respondeat superior against the employer); <u>Cameron v. Osler</u>, 930 N.W.2d 661, 666 (S.D. 2019) (holding that the "purely procedural" dismissal of a claim against the agent based on the statute of limitations does not preclude the claim against the employer under the respondeat superior doctrine because the dismissal of the claim against the agent based on the statute of limitations does not "determine [the agent's] culpability").

Likewise, the Supreme Court of Delaware has held that, in a negligence action against a principal based on the principles of respondeat superior, the dismissal on a procedural ground of claims

against the agent does not automatically exonerate the principal of vicarious liability.  In <u>Verrastro v. Bayhospitalists, LLC</u>, 208 A.3d 720, 728-29 (Del. 2019), a case similar to the one now before us, a patient's daughter, as the personal representative of the patient's estate, brought a medical-negligence action against the doctors and the hospital responsible for her mother's care. In concluding that the dismissal of the claims against the doctors based on procedural grounds did not exonerate the hospital from liability, the Supreme Court of Delaware explained that the traditional respondeat superior principles regarding the judgment "on the merits" language "<u>was not intended to encompass procedural dismissals that do not adjudicate the wrongfulness of the agent's conduct</u>." <u>Id.</u> at 728 (emphasis added).

Notably, the court observed that, in its view, a contrary rule would be illogical. Specifically, the court observed that allowing the "unnecessary choice to belatedly sue the [agents]" to "eviscerate" the "otherwise-viable claim" against the principal would be to "condone an absurd -- and, we suggest, unintended -- result." <u>Id.</u> at 729.[6]

_____

[6]In reaching its conclusion in <u>Verrastro</u>, the Supreme Court of Delaware overruled its prior decision in <u>Greco v. University of Delaware</u>, 619 A.2d 900 (Del. 1993), which held that, if a plaintiff has failed to sue

34

an employee within the applicable statute-of-limitations period, the plaintiff is likewise barred from suing the employer under the principles of respondeat superior. Verrastro, 208 A.3d at 728. According to the Verrastro court, in reaching that conclusion in Greco, the court relied on § 217B(2) of the Restatement (Second) of Agency (Am. L. Inst. 1958), which provides that "'[i]f the action is based solely upon the tortious conduct of the agent, judgments on the merits for the agent and against the principal, or judgments of varying amounts for compensatory damages are erroneous.'" Id. at 727 (quoting Restatement (Second) of Agency § 217B(2)).

The Verrastro court explained, however, that that section of the Restatement (Second) of Agency "was meant to prevent substantively inconsistent outcomes" but it was "not meant to reach the issue of whether procedural defenses run from an agent to a principal." Id. at 728. In support of its position, the Verrastro court, in a footnote, pointed to a comment to § 217B(2), which cites the Restatement (First) of Judgments § 99 (Am. L. Inst. 1942), which states that

> "[a] valid judgment on the merits and not based on a personal defense, in favor of a person charged with the commission of a tort … bars a subsequent action by the plaintiff against another responsible for the conduct of such person if the action is based solely upon the existence of a tort … by such person, whether or not the other person has a right of indemnity."

(Emphasis added.) See Verrastro, 208 A.3d at 728 n.37. In further support of its position, the Verrastro court also pointed to § 217 of the Restatement (Second) of Agency which states that "[i]n an action against a principal based on the conduct of a servant in the course of employment … [t]he principal has no defense because of the fact that … the agent had an immunity from civil liability as to the act." See Verrastro, 208 A.3d at 728. Based on the foregoing, the Verrastro court reasoned that just as an

35

II. States in Favor of Barring Further Litigation Against the Principal When Claims Against the Agent Are Dismissed with Prejudice Based on the Statute of Limitations or Other Similar Grounds

As stated previously, there are other states that favor barring further litigation against the principal once claims against the agent have been dismissed with prejudice. In some states, this is true regardless of the reason for the dismissal.

For example, in Arkansas, "[i]t is well-settled that when an employee has been released or dismissed, and the employer has been sued solely on a theory of vicarious liability, any liability of the employer is likewise eliminated." Stephens v. Petrino, 350 Ark. 268, 279, 86 S.W.3d 836, 843 (2002) (citing Hartford Ins. Co. v. Mullinax, 336 Ark. 335, 984 S.W.2d 812 (1999)).

Michigan also bars pursuing a suit against an employer on a vicarious-liability claim when the claims against the employee are dismissed with prejudice in certain contexts. For example, in Al-Shimmari v. Detroit Medical Center, 477 Mich. 280, 731 N.W.2d 29

_____

agent's immunity does not automatically shield the principal, neither should a time-bar defense necessarily extend from the agent to the principal. Id. at 728.

36

(2007), the Supreme Court of Michigan held that "the dismissal of the claims against [the agent] operates as an adjudication on the merits of the claims against [the agent]" and that, as a result, the plaintiff "consequently is unable to show that the [principal is] vicariously liable for the acts of [the agent]." 477 Mich. at 295-96, 731 N.W. 2d at 37. In support of its holding, the court reasoned that when the claim against the agent is dismissed with prejudice, such as under the statute of limitations, that "prevents [the] plaintiff from arguing the merits of the … claim against [the agent]." 477 Mich. at 296, 731 N.W. 2d at 37. As a result, the Supreme Court of Michigan emphasized that, because the agent cannot be held liable, the principal likewise cannot be held vicariously liable for its agent's conduct. See id.

Similarly, "except perhaps in certain unusual circumstances," New York does not allow a vicarious-liability claim to proceed against a principal when the claims against the agent have been dismissed. Karaduman v. Newsday, Inc., 51 N.Y.2d 531, 546, 416 N.E.2d 557, 564, 435 N.Y.S. 2d 556, 563 (1980). For example, in Karaduman, New York's Court of Appeals held that, when a principal is sued under the principles of respondeat superior and the claims against its agent are subsequently

dismissed under the statute of limitations, "any vicarious liability that [the principal] might have had in consequence of its [agents'] alleged misconduct must similarly be deemed extinguished." In reaching that conclusion, the Court of Appeals reasoned that, in such a situation, "the suit against [the principal] cannot be maintained solely on the theory that it is vicariously liable, since there is no primary liability upon which such a claim of vicarious liability might rest." Id.

Finally, Ohio has a special rule regarding vicarious liability in professional-malpractice suits pertaining to lawyers, physicians, and their employers. For instance, similar to the present case, in Clawson v. Heights Chiropractic Physicians, L.L.C., 170 Ohio St. 3d 451, 214 N.E.3d 540 (2022), the plaintiff sued a doctor, alleging medical negligence. The plaintiff also sued the doctor's employer, asserting that it was vicariously liable. However, because the plaintiff failed to properly serve the doctor, the doctor moved to dismiss the plaintiff's claims against him based on the statute of limitations. After the trial court granted that motion, the employer then moved for a summary judgment in its favor on the plaintiff's claim against the employer premised on vicarious liability. That motion was also granted.

On appeal, the Supreme Court of Ohio held that a vicarious-liability claim against a physician's employer is barred "when a direct claim against the physician is time-barred." 170 Ohio St. 3d at 460, 214 N.E. 3d at 548. In reaching that holding, the court explained that it was extending the principles that it had previously applied to legal-malpractice cases to medical-malpractice cases. 170 Ohio St. 3d at 459-60, 214 N.E. 3d at 547-48. Those principles provided that a law firm could not be held vicariously liable for the acts or omissions of its associates unless at least one of its associates was liable for malpractice. See id. Its reason for doing so, the court explained, was because of the "widely acknowledged similarities between legal malpractice and medical malpractice." 170 Ohio St. 3d at 460, 214 N.E. 3d at 548. But see Marshall v. Mercy Health-Anderson Hosp., L.L.C., 265 N.E.3d 273 (Ohio Ct. App. 2025) (refusing to apply this rule to nurses).

III. Options Available to the Legislature

Finally, it is worth noting that the Legislature has the authority to create a default rule -- or special rules for particular claims -- that can clarify when a plaintiff's claim premised on vicarious liability can proceed against a principal even when the agent is no longer in the action. It

certainly would not be the first time the Legislature has done so.

For example, the Legislature adjusted the traditional doctrine of respondeat superior in the context of volunteer services when it enacted the Volunteer Service Act ("the VSA"), § 6-5-336, Ala. Code 1975. The Legislature's stated purpose for enacting the VSA was to "encourage volunteers to contribute their services for the good of their communities and at the same time provide a reasonable basis for redress of claims which may arise relating to those services." § 6-5-336(b)(3).

Under the VSA, a volunteer is granted civil immunity for acts or omissions that cause damage, so long as the volunteer acted in good faith within the scope of his official duties and did not engage in willful or wanton misconduct. See § 6-5-336(d). While the VSA shields volunteers from personal liability, it does not categorically exempt their principals from vicarious liability. For example, it provides that "nonprofit organizations, nonprofit corporations, and hospitals" can "still be held liable for the 'negligent act or omission of a volunteer' under the doctrine of respondeat superior 'notwithstanding the immunity granted to the volunteer with respect to any act or omission included under subsection (d).'" Rogers, ____ So. 3d at ____ (quoting § 6-5-336(e)) (emphasis added).

40

This is a clear public-policy choice made by the Legislature to create an exception to the general Alabama rule for specific types of defendants regarding respondeat superior liability.

A similar measure could be taken by the Legislature to deal with situations like those in the present case. For instance, the Legislature could adopt the approach taken by some of the states discussed above by making clear that a principal can still be liable for the conduct of its agent even if claims against that agent are dismissed with prejudice based on a statute-of-limitations defense. Or, the Legislature could expressly codify the existing Alabama rule for all tort law. Or, it could codify the existing rule, but only for particular types of cases, such as specific professional-malpractice cases. In other words, the Legislature could make clear what the rule should be or it could make different rules for different contexts.

III. Conclusion

I make no judgment about which of the above approaches is better reasoned or whether Alabama should create an exception to its current approach in favor of those adopted by other states. Rather, as I stated at the beginning of this special writing, my purpose here is to highlight for

the bench, the Bar, and the Legislature the divergent approaches that have been taken by other states concerning the liability of a principal in circumstances similar to those now before us. My hope is that this will encourage parties to expressly raise and thoroughly brief this issue for our Court in a future appeal. <u>See</u> Rule 28(a)(10), Ala. R. App. P.

SHAW, Justice (concurring in the result).

I do not agree with the premise that a dismissal with prejudice of claims against an agent automatically disposes of a vicarious-liability claim against the principal in every case. Here, it is undisputed that the agent was dismissed because the claims against him were barred by the statute of limitations. The vicarious-liability claim against the principal, however, appears timely filed.

Here, the dismissal of the claims against the agent was not the kind of dismissal discussed in Alfa Life Insurance Corp. v. Jackson, 906 So. 2d 143 (Ala. 2005), which was described as follows:

> "The dismissal with prejudice of the claims alleged against [the agent] -- the torts of fraud and negligent or wanton failure to procure insurance -- constituted an adjudication on the merits to the effect that [the agent] was not guilty of committing either of those torts. Therefore, [the principal] could hardly be guilty of committing those same torts by and through the agency of [the agent] and thus could not be vicariously liable for those torts under the doctrine of respondeat superior."

906 So. 2d at 154 (emphasis added). In Jackson, the plaintiff apparently decided to abandon his claims against the agent in exchange for an

agreement that the agent not testify for the principal.[7]  In <u>Barlow v. Liberty National Life Insurance Co.</u>, 708 So. 2d 168 (Ala. Civ. App. 1997), upon which the Court in <u>Jackson</u> relied, we are not told why the claims against the agent were dismissed; at best, the plaintiff in that case abandoned his claims against the agent.  Further, the court in <u>Barlow</u> cited <u>Larry Terry Contractors, Inc. v. Bogle</u>, 404 So. 2d 613 (Ala. 1981), a wholly distinguishable case in which a jury found in favor of the agents but found the principal liable under a theory of vicarious liability.  The Court in <u>Larry Terry Contractors</u>, quoting <u>Louisville & Nashville R.R. v. Maddox</u>, 236 Ala. 594, 600, 183 So. 849, 853 (1938), stated:

> "'The rule that prevails is that, when the principal and his agent are sued in joint action in tort for misfeasance or malfeasance of the servant, and his liability for the conduct of said servant is under the rule of respondeat superior, a verdict in favor of the servant entitles the master to have the verdict against him set aside.'"

404 So. 2d at 614.

Clearly, when an agent receives a verdict in his favor, meaning that the jury found that he did no wrong, there can be no vicarious liability on

---

[7]In <u>Jackson</u>, the plaintiff claimed, after the dismissal, that the claims against the agent had been dismissed because he apparently had agreed that he "'would not help'" the principal.  <u>Jackson</u>, 906 So. 2d at 148.

the part of the principal for that same conduct. The court in <u>Barlow</u> appeared to stretch a dismissal with prejudice -- apparently when a plaintiff abandons a claim -- to equate with a verdict in favor of that party. <u>Jackson</u> embraced that proposition. Thus, those cases purport to stand for the proposition that, when a plaintiff elects to forgo his claims against an agent, and thus has the claims against the agent dismissed with prejudice, a dismissal that, in the terms of <u>Jackson</u>, constitutes "an adjudication on the merits to the effect" that the agent "was not guilty of committing" the tort underlying a vicarious-liability claim, the principal is similarly "not guilty" or vicariously liable. <u>Jackson</u>, 906 So. 2d at 154. However, neither <u>Jackson</u> nor <u>Barlow</u> specifically holds, nor requires the conclusion, that a dismissal of the claims against an agent premised on a non-merits-based defense requires the dismissal of a vicarious-liability claim against the principal. They are silent in that regard. What we do know is that the premise on which each case was decided stems from <u>Larry Terry Contractors</u>, which correctly holds that a verdict in favor of an agent -- a merits-based defense -- entitles the principal to a verdict in its favor.

    Additionally, a pro tanto release of an agent who is the active

tortfeasor, and the resulting dismissal with prejudice of the claims against the agent, can also be deemed to act to "exonerate" a principal. Jackson, 906 So. 2d at 155. But that is because the release itself may extinguish the claim against the principal, not simply because the claims against the agent are dismissed. Daugherty v. M-Earth of Alabama, Inc., 519 So. 2d 467, 468 (Ala. 1987) (noting that a release might be construed as providing full satisfaction of a plaintiff's claim unless it reserves rights against other tortfeasors). See also Salter v. A. Fraser Pattillo, Jr., Inc., 519 So. 2d 930, 931 (Ala. 1988) ("[T]he language of the release … clearly shows that the [plaintiffs] did not intend to release [the principal], but expressly reserved all rights, claims and causes of action against it. The clear meaning of the terms of the settlement was to release only [the agent], and not [the principal]."). Thus, it is incumbent upon the plaintiff to ensure that the language of a release reserves claims against other defendants. Id.

In the present case, it appears undisputed that the claims against the agent were dismissed because the statute of limitations barred those claims. While a dismissal "with prejudice" may be referred to as an adjudication "on the merits," care should be taken to ensure that this

46

phrase is not overread.[8] The "merits" of the plaintiff's factual claim in this case -- that the agent engaged in tortious conduct -- was not determined. No jury has found, as a matter of fact, that the agent's conduct was not tortious. <u>Larry Terry Contractors</u>, supra. Nor has the plaintiff elected to abandon his claim "to the effect that [the agent] was not guilty of committing" the tort. <u>Jackson</u>, 906 So. 2d at 154. And no release has been executed in this case, the terms of which might have, with no reservation of rights, satisfied the plaintiff's claim against the principal. <u>Jackson</u>, supra. Instead, a determination whether the agent is <u>liable</u> for his conduct is barred and cannot be decided "on the merits" in the first place. But whether <u>that conduct occurred</u> has not been decided "on the merits."

_____

[8]While the decision in <u>McGilvray v. Perkins</u>, 407 So. 3d 283, 289 (Ala. 2024), states that a "judgment based on the statute of limitations is a judgment on the merits," that proposition appears limited to determining the res judicata effect of the judgment. <u>McGilvray</u> cites <u>Plaut v. Spendthrift Farm, Inc.</u>, 514 U.S. 211, 228 (1995), which explains that "[t]he rules of finality ... treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits." (Emphasis added.) The present case involves no issues of res judicata or finality.

This Court may affirm for any reason, and it is the burden of the appellant to demonstrate reversible error. Because these issues are not addressed by the appellant, they cannot form the basis of a reversal. Therefore, I concur in the result to affirm the trial court's summary judgment.